**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| AL JAZEERA STEEL PRODUCTS CO. SAOG,<br><br>PLAINTIFF,<br><br>v.<br><br>UNITED STATES,<br><br>DEFENDANT,<br><br>and<br><br>BULL MOOSE TUBE COMPANY, MARUICHI AMERICAN CORPORATION, WHEATLAND TUBE COMPANY, AND THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL CIO, CLC,<br><br>DEFENDANT-INTERVENORS. | **PUBLIC (NON-COONFIDENTIAL) VERSION**<br><br><br>**Before: Mark A. Barnett, Chief Judge**<br>**Court No. 26-01061**<br><br><br>**Confidential Information in brackets redacted at pp. 16-18, 21, 30-34, 38-40, 42, 43, 46, 51** |

**RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

**OF PLAINTIFF AL JAZEERA STEEL PRODUCTS CO. SAOG**

David L. Simon, Esq.
LAW OFFICES OF DAVID L. SIMON, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, D.C. 20036
Tel.: +1(202) 236-2417
Email: DLSimon@DLSimon.com

Date: July 27, 2026

*Counsel to Al Jazeera Steel Products Co. SAOG*

**TABLE OF CONTENTS**

OVERVIEW ..................................................................................................................1

STATEMENTS PURSUANT TO RULE 56.2(c)(1) ...................................................2

   1.   Administrative Determination To Be Reviewed ...............................................2

   2.   Issues Presented And Summary Of Argument...................................................3

   3.   The Procedure Below ........................................................................................5

STANDARD OF REVIEW.........................................................................................7

ARGUMENT...............................................................................................................9

   I.   Legal Framework...............................................................................................9

   II.   Commerce Erred In Holding That A Single Product From A Single
       Country Can Lawfully Be Subject To Overlapping Antidumping Orders........11

   III.  Commerce's Final Determination As To The "Factors To Consider"
       Under § 781(b)(3) Is Not Supported By Substantial Evidence And Is
       Otherwise Unlawful.........................................................................................15

        A.   Pattern of Trade and Sourcing ..............................................................15

           1.   Commerce's Analysis Of Pattern of Trade.....................................15

           2.   Commerce's Analysis Of Sourcing.................................................17

        B.   Commerce's Analysis Is Legally And Factually Deficient ...................18

           1.   Commerce's Pattern Of Trade Analysis Is Legally And
              Factually Deficient.........................................................................18

           2.   Commerce's Pattern of Sourcing Analysis Is Legally And
               Factually Deficient.........................................................................25

        C.   Affiliation..............................................................................................40

        D.   Whether Shipments Of HRS From China To Oman Increased ............42

           1.   The Proceedings Below ..................................................................42

           2.   Argument ........................................................................................45

   IV.  Commerce Failed To Consider Whether Action Was Appropriate To
       Prevent Evasion Of The China Orders .............................................................48

CONCLUSIONS.......................................................................................................50

## TABLE OF AUTHORITIES

**CASES**

*Arcelormittal Stainless Belg. N.V. v. United States*, 694 F.3d 82 (CAFC 2012). ........................52

*Arcelormittal Stainless Belg. N.V. v. United States*, Slip Op. 2011-82, 2011 Ct. Intl. Trade LEXIS 82 (Ct. Int'l Trade July 12, 2011) ................................................................51

*Asociacion Colombiana de Exportadores de Flores v. United States*, 704 F. Supp. 1114, 1117, 13 CIT 13, 15 (1989), aff'd, 901 F.2d 1089 (Fed. Cir. 1990)................................49

*Bonney Forge Corp. v. United States*, 2025 Ct. Intl. Trade LEXIS 59; SLIP OP. 25-56 (May 6, 2025).......................................................................................................25

*China National Arts and Crafts Import and Export Corp., Tianjin Branch v. United States,* 771 F. Supp. 407 (Ct. Int'l Trade 1991)..............................................................49

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)........................................................................7

*Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 140 S. Ct. 1891, 207 L. Ed. 2d 353 (2020) ....................................................25

*Ellwood City Forge Co. v. United States*, 788 F. Supp. 3d 1317  (Ct. Int'l Trade 2025)................................................................................................................................25

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 136 S. Ct. 2117, 195 L. Ed. 2d 382 (2016) ..............................................................................................................25

*Foshan Shunde Yongjian Housewares & Hardwares Co. v. United States*, 896 F. Supp. 2d 1313 (Ct. Int'l Trade 2013).......................................................8, 14, 25, 48

*Gerald Metals, Inc. v. United States*, 132 F.3d 716  (Fed. Cir. 1997)..............................................8

*Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369 (Fed. Cir. 2003).......................................................................................................................................7

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244; 219 L. Ed. 2d 832 (2024). .......................9, 13

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)..............................................................9

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) .........................8, 20, 29, 32

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006) ..............................................8

*Pakfood Pub. Co. Ltd. v. United States*, 753 F. Supp. 2d 1334 (Ct. Int'l Trade 2011)................................................................................................................................52

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990).......................................38

*Save Domestic Oil, Inc. v. United States*, 357 F.3d 1278 (Fed. Cir. 2004) .........................8, 21, 50

*Seah Steel Vina Corp. v. United States*, 815 F. Supp. 3d 1369 (Ct. Int'l Trade 2025)................................................................................................................................48

*Transactive Corp. v. United States*, 91 F.3d 232, 319 U.S. App. D.C. 428 (D.C. Cir. 1996)..................................................................................................................8

*Tung Mung Development Co., Ltd. v. United States*, 219 F. Supp. 2d 1333 (Ct. Int'l Trade 2002) ................................................................................................11, 27

*U.K. Carbon & Graphite Co. v. United States*, 931 F. Supp. 2d 1322 (Ct. Int'l Trade 2013) ..............................................................................................................8, 50

*Union Steel Mfg. Co. v. United States*, 837 F. Supp. 2d 1307 (Ct. Int'l Trade 2012)....................38

*United States Steel Corp. v. United States,* 348 F. Supp. 3d 1248, (Ct. Int'l Trade 2018)...............................................................................................................9, 51

*USX Corp. v. United States*, 11 CIT 82,  655 F. Supp. 487 (1987)..........................................8, 21

*West Virginia v. EPA*, 142 S. Ct. 2587 (2022) ..............................................................13

*Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998) ........................................8

## STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i). ................................................................................................7

Omnibus Trade and Competitiveness Act of 1988, P. L. 100-418, 102 Stat. 1107 (1988). ........................................................................................................................10

Tariff Act of 1930, as amended, § 781(b)(1)(E), 19 U.S.C. § 1677j(B)(1)(E)......................passim

Tariff Act of 1930, as amended, §§ 781(b)(1)(A)-(D), 19 U.S.C. §§ 1677j(b)(1)(A)-(D) .......................................................................................................11, 49

Uruguay Round Agreements Act, P. L. 103-465, 108 Stat. 4809 (1994)....................................10

## OTHER AUTHORITIES

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (1994), reprinted in 1994 U.S.C.C.A.N. 4040................................................................................................10, 15

*Webster's New International Dictionary of the English Language,* 2d. Ed. Unabridged (1959)....................................................................................................33

## REGULATIONS

19 C.F.R. § 351.226(i)................................................................................................................6

19 C.F.R. Part 360 ....................................................................................................................27

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 85 Fed. Reg. 49,472 (Dep't Commerce Aug. 13, 2020)...................................................................................................................11, 27

## ADMINISTRATIVE DETERMINATIONS

*Antidumping Duty Order: Circular Welded Carbon Quality Steel Pipe from the People's Republic of China,* 73 Fed. Reg. 42,547 (Dep't Commerce July 22, 2008 ................................................................................................................5, 11

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order*, 73  Fed. Reg. 42,545 (Dep't Commerce July 22, 2008)..............................................................................................................................5

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 Fed. Reg. 4,871 (Dep't Commerce Feb. 3, 2026)...........................................................................................................................2, 7

*Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping and Countervailing Duty Orders*, 89 Fed. Reg. 91,327 (Dep't Commerce Nov. 19, 2024)...........................................................................................................................6, 29

*Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 90 Fed. Reg. 34,427 (Dep't Commerce July 22, 2025) ................................................................................7

*Circular Welded Carbon-Quality Steel Pipe From the Sultanate of Oman, Pakistan, and the United Arab Emirates: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Orders,* 81  Fed. Reg. 91,906 (Dep't Commerce Dec. 19, 2016) ..........................................................5, 11

*Corrosion-Resistant Steel Products from the People's Republic of China: Affirmative Final Determination of Circumvention Involving the United Arab Emirates*, 85 Fed. Reg. 41,957 (Dep't Commerce July 13, 2020) ....................................24, 37

*Corrosion-Resistant Steel Products from the People's Republic of China: Affirmative Preliminary Determination of Circumvention Involving the United Arab Emirates*, 85 Fed. Reg. 8,841 (Dep't Commerce Feb. 18, 2020)........................24, 26, 37

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders*, 87  Fed. Reg. 19,071 (Dep't Commerce April 1, 2022) ................................................................12, 13, 14

*Oil Country Tubular Goods from the People's Republic of China: Final Affirmative Determinations of Circumvention*, 86 Fed. Reg. 67,443 (Dep't Commerce Nov. 26, 2021) ................................................................................24

*Oil Country Tubular Goods from the People's Republic of China: Preliminary Affirmative Determinations of Circumvention*, 86 Fed. Reg. 43,627 (Dep't Commerce Aug. 10, 2021) ................................................................................24

*Uncoated Paper from Brazil, the People's Republic of China, and Indonesia: Affirmative Final Determinations of Circumvention of the Antidumping Duty*

*Orders and Countervailing Duty Orders for Certain Uncoated Paper Roll*, 86
Fed. Reg. 71,025 (Dep't Commerce Dec. 14, 2021).................................................24

*Uncoated Paper from Brazil: Affirmative Preliminary Determination of
Circumvention of the Antidumping Duty Order for Uncoated Paper Rolls*, 86
Fed. Reg. 7,261 (Dep't Commerce Jan. 27, 2021) ...................................................24

*Welded Carbon Steel Standard Pipes and Tubes From India: Final Negative
Determinations of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg.
12,917 (Dep't Commerce March 1, 2023) .............................................6, 25, 30, 36

*Welded Carbon Steel Standard Pipes and Tubes From India: Initiation of
Circumvention Inquiry on the Antidumping Duty Order*, 87 Fed. Reg. 9,571
(Dep't Commerce Feb. 22, 2022);...........................................................................30

*Welded Carbon Steel Standard Pipes and Tubes From India: Preliminary
Negative Determinations of Circumvention of the Antidumping Order*, 87 Fed.
Reg. 52,507 (Dep't Commerce Aug. 26, 2022) .........................................6, 23, 24, 30

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AL JAZEERA STEEL PRODUCTS CO. SAOG,<br><br>PLAINTIFF,<br><br>v.<br><br>UNITED STATES,<br><br>DEFENDANT,<br><br>and<br><br>BULL MOOSE TUBE COMPANY, *et al.*,<br><br>DEFENDANT-INTERVENORS. | **CONFIDENTIAL VERSION**<br><br><br>**Before: Mark A. Barnett,<br>Chief Judge<br>Court No. 26-01061** |

## RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD OF PLAINTIFF AL JAZEERA STEEL PRODUCTS CO. SAOG

Plaintiff Al Jazeera Steel Products Co. SAOG ("Al Jazeera" or "AJSP") respectfully moves for judgment on the record regarding the final determination of the Department of Commerce ("Commerce") that imports of circular welded carbon steel pipe ("CWP") produced in Oman using hot-rolled steel ("HRS" or "coil") produced in the People's Republic of China ("China") are circumventing the antidumping duty ("AD") and countervailing duty ("CVD") orders on CWP from China.

For the reasons set forth below, Al Jazeera requests that this Court remand this case to Commerce for reconsideration.

### OVERVIEW

This appeal presents two issues fundamental to the administration of U.S. trade law.

*First*, whether it is lawful to subject a given product from a given country to two separate antidumping orders. Commerce has never done this before. The existence of overlapping AD

*26-1061 AJSP Rule 56.2 Motion PUB.docx*

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

orders allows the foreign respondent to wall-off a portion of its home-market sales from the margin calculations, enabling a respondent to manipulate its margins at will, and creates other irresolvable complexities for the administration of the trade laws. Al Jazeera submits that the existence of an AD order on *CWP from Oman* precludes Commerce from subjecting CWP from Oman to an AD order on *CWP from China*.

The *second* fundamental issue is how to differentiate between (i) ordinary commercial behavior that may lead a respondent temporarily to concentrate its purchases of a given input to suppliers from a single country, and (ii) behavior that constitutes an input supplier's efforts to circumvent a dumping order. Differentiating between normal commercial activity and circumvention requires a systematic analysis with well-articulated evidentiary standards and due regard for whether an affirmative determination is appropriate to prevent evasion. Al Jazeera submits that Commerce systematically ignored evidence that Al Jazeera's reliance on Chinese HRS was transitory and that Al Jazeera was engaged in ordinary commercial conduct, and that Commerce failed to assess whether a circumvention finding was appropriate to prevent evasion.

## STATEMENTS PURSUANT TO RULE 56.2(c)(1)

### 1. Administrative Determination To Be Reviewed

Al Jazeera contests Commerce's final determination that imports of CWP produced in Oman using HRS produced in China are circumventing the AD and CVD orders on CWP from China. See, *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 Fed. Reg. 4,871 (Dep't Commerce Feb. 3, 2026) (the "Final Determination"), P.R. 5, and accompanying Final Decision Memorandum ("FDM"), P.R. 6.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

### 2.  Issues Presented And Summary Of Argument

This appeal presents the following issues.

**Issue 1**:  Whether there may be multiple antidumping orders on a given product from a given country.

**Answer**:  No. Sound administration of the trade laws requires that a single product from a single country be subject to one and only one antidumping order.  To hold otherwise would, *inter alia*, enable a respondent to wall-off from the margin calculations a subset of high-priced home-market sales and thus to manipulate margins at will.

**Issue 2**:  Whether Commerce's analysis of patterns of trade and sourcing, affiliation, and increased imports of raw material under § 781(b)(3) of the statute, 19 U.S.C. § 1677j(b), was supported by substantial evidence showing clear, definitive changing patterns of trade.

**Answer**:  No. The final determination was unsupported by substantial evidence insofar as it relied on selective data controverted by uncontested evidence that Commerce declined to consider; it was contrary to law insofar as Commerce ignored its longstanding practice of finding circumvention only when supported by clear and definitive facts; and it was otherwise unlawful because Commerce abused its discretion in declining to consider public trade statistics from a period during and immediately after Commerce's period of inquiry.

**Issue 3.** Whether Commerce's failure to explain why an affirmative determination was appropriate to prevent evasion of the Orders, as required by § (b)(1)(E), compels a remand.

**Answer**: Yes. The statute requires Commerce to make a separate determination of whether an affirmative determination is appropriate to prevent evasion; Commerce's failure to explain its determination in this regard compels a remand.

We summarize Al Jazeera's arguments as follows.

*Issue 1.*   The statute is silent on whether a single product from a single country can be subject to multiple AD orders. Commerce considers this silence as permissive. This Court is

*26-1061 AJSP Rule 56.2 Motion PUB.docx*

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

obliged to conduct its own analysis of this issue of law. Al Jazeera submits that the existence of overlapping Orders will create chaos in the administration of the trade laws. For example, in a sunset review of CWP from Oman, should the ITC consider as subject merchandise Omani CWP produced from Chinese HRS, when Commerce has determined that such pipes are subject to the AD order on CWP from China? Moreover, if Al Jazeera's CWP produced from Chinese HRS is nonsubject merchandise vis-à-vis the AD order on CWP from Oman, then Al Jazeera could selectively use Chinese HRS for a portion of its home-market ("HM") sales, thereby walling off such sales from antidumping scrutiny and allowing Al Jazeera to create a two-tiered HM pricing structure to avoid AD duties. Al Jazeera therefore urges this Court to find that the statute does not allow the application of overlapping AD orders.

*Issue 2.*  Commerce relied on a single tabulation of import statistics showing that U.S. imports of CWP from China fell during the period of inquiry ("POI"), 2019-2023, versus the comparison period, 2014-2018, while imports from Oman increased between the comparison period and the POI. Al Jazeera argues that Commerce's exclusive reliance on five-year blocs of time masked considerable variations within the respective periods; that data not considered in Commerce's analysis controverted Commerce's conclusions as to patterns of trade and sourcing, affiliation, and Omani imports of Chinese HRS; and that Commerce's refusal to follow its longstanding precedent to find circumvention only when the facts show a clear, definitive changing pattern of trade constitutes an unlawful change in practice.

*Issue 3.* Commerce failed to articulate any reason why an affirmative determination was appropriate to prevent circumvention, as required by the statute.

The Court should find Commerce's legal conclusion as to Issue #1 unlawful, and should remand for reconsideration as to Issues #2 and 3.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

### 3.    The Procedure Below

Plaintiff Al Jazeera is the predominant Omani producer of circular welded carbon steel pipe ("CWP"). Al Jazeera produces CWP entirely from imported hot-rolled steel ("HRS").[1]

The defendant-intervenors are U.S. CWP producers and a union representing CWP workers; they collectively participated as domestic interested parties ("DIPs") below.

There are three orders underlying the anticircumvention inquiry underlying this appeal: 2008 antidumping ("AD") and countervailing duties ("CVD") orders on *CWP from China*[2] and a 2016 AD order on *CWP from Oman*.[3]  At issue below was whether China was circumventing the *China CWP AD/CVD Orders* by funneling HRS to Oman, where it was transformed into Omani CWP in avoidance of the *China Orders*.

By way of background, the present inquiry was conducted barely a year after Al Jazeera had successfully defended against identical charges of circumvention vis-à-vis the AD order on

---

[1] *See*, AJSP Initial Questionnaire Response, March 11, 2025 ("IQR") at 9, C.R. 59, P.R. 67.

[2] *Antidumping Duty Order: Circular Welded Carbon Quality Steel Pipe from the People's Republic of China,* 73 Fed. Reg. 42,547 (Dep't Commerce July 22, 2008) ("*China AD Order*"); *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order*, 73 Fed. Reg. 42,545 (Dep't Commerce July 22, 2008) ("*China CVD Order*").

[3] *Circular Welded Carbon-Quality Steel Pipe From the Sultanate of Oman, Pakistan, and the United Arab Emirates: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Orders,* 81  Fed. Reg. 91,906 (Dep't Commerce Dec. 19, 2016) ("*Oman Order*").

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

CWP from India.[4] The period of inquiry ("POI") in the *India/Oman* case, 2017 – 2021,[5] overlapped substantially with that in the instant case, which covered 2019 – 2023.[6]

Commerce's inquiry proceeded as follows, as relevant hereto:

On July 9, 2024, DIPs filed requests for circumvention inquiries under Section 781(b) of the Tariff Act of 1930, as amended (the "Act") (19 U.S.C. § 1677j(b)), and 19 C.F.R. § 351.226(i), alleging that China was circumventing the China AD/CVD Orders by shipping increasing volumes of HRS to Oman, where it was converted to CWP and shipped to the United States, and asking that CWP from Oman made from Chinese HRS be included in the scope of the *China AD/CVD Orders*. C.R. 82, P.R. 131.

Al Jazeera filed Initial Comments on July 21, 2024, C.R. 76, P.R. 119.

On November 12, 2024, Commerce initiated the inquiry, *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping and Countervailing Duty Orders*, 89 Fed. Reg. 91,327 (Dep't Commerce Nov. 19, 2024) ("*Initiation Notice*"). P.R. 25.

On February 4, 2025, Commerce issued a questionnaire to Al Jazeera. P.R. 77.

---

[4] *Welded Carbon Steel Standard Pipes and Tubes From India: Preliminary Negative Determinations of Circumvention of the Antidumping Order*, 87 Fed. Reg. 52,507 (Dep't Commerce Aug. 26, 2022) ("*India/Oman Circumvention Prelim.*"), accompanied by Commerce's memorandum, "Certain Welded Carbon Steel Standard Pipes and Tubes from India: Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty Order" ("*India/Oman PDM*"); *Welded Carbon Steel Standard Pipes and Tubes From India: Final Negative Determinations of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 12,917 (Dep't Commerce March 1, 2023) ("*India/Oman Circumvention Final*"), accompanied by Commerce's "Issues and Decision Memorandum for the Final Negative Determination of Circumvention of the Antidumping Duty Order on Certain Welded Carbon Steel Standard Pipes and Tubes from India" ("*India/Oman IDM*").

[5] *See*, *id*. at 20.

[6] *See,* FDM at 8.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

On March 11, 2025, Al Jazeera filed its initial questionnaire response ("IQR"). C.R. 59, P.R. 67. Subsequently, Al Jazeera filed two supplemental responses, SQR#1, C.R. 10, P.R. 35, and SQR#2, C.R. 6, P.R. 32.

On July 22, 2025, Commerce published its preliminary determination, *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 90 Fed. Reg. 34,427 (Dep't Commerce July 22, 2025), P.R. 27, accompanied by Commerce's "Preliminary Analysis Memorandum" ("PAM"), C.R. 3, P.R. 26, and its "Preliminary Decision Memorandum" ("PDM"), P.R. 28.

On August 7, 2025, Al Jazeera filed its case brief, C.R. 1, P.R. 22.

On February 3, 2026,[7] Commerce issued its Final Determination, P.R. 5, accompanied by its FDM, P.R. 6, and this appeal followed.

## STANDARD OF REVIEW

"The court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

"Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence supports the agency's determination, the Court must consider "the record as a whole, including evidence that supports as well as evidence

---

[7] Commerce's schedule was delayed by a 47-day tolling because of a government-wide shutdown (P.R. 12).

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [      ]*

that 'fairly detracts from the substantiality of the evidence.'" *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).  Substantial evidence review requires that the court assess whether the agency action is reasonable given the record as a whole.  *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006).

Commerce's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987).  The substantial evidence standard requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (citation omitted).

The Court will find that a decision is not arbitrary or capricious, *inter alia*, if it reflects a "logically reasoned and well-researched approach." *Save Domestic Oil, Inc. v. United States*, 357 F.3d 1278, 1289 (Fed. Cir. 2004). Thus, "Courts 'look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion.'" *U.K. Carbon & Graphite Co. v. United States*, 931 F. Supp. 2d 1322, 1328 (Ct. Int'l Trade 2013) (*quoting Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998)).

Further, "An 'agency action is arbitrary when the agency offers{s} insufficient reasons for treating similar situations differently.'" *Foshan Shunde Yongjian Housewares & Hardwares Co. v. United States*, 896 F. Supp. 2d 1313, 1325 (Ct. Int'l Trade 2013) (*quoting Transactive Corp. v. United States*, 91 F.3d 232, 237, 319 U.S. App. D.C. 428 (D.C. Cir. 1996) (*citing Motor*

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

*Vehicle Mfrs. Ass'n, Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 57, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983))).

Moreover, "Where Commerce has an established practice, such practice is part of the law Commerce must follow, unless it explains why it is reasonable to deviate from its practice or it changes its practice." *United States Steel Corp. v. United States,* 348 F. Supp. 3d 1248, 1260 (Ct. Int'l Trade 2018).

For issues of statutory construction,

> Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires.… {C}ourts need not … defer to an agency interpretation of the law simply because a statute is ambiguous.

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273; 219 L. Ed. 2d 832, 867 (2024).

## ARGUMENT

### I.  Legal Framework

This appeal arises from an anticircumvention inquiry under section 781(b) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677j(b), which provides:

> (1) In general
>
> If—
>
> (A) merchandise imported into the United States is of the same class or kind as any merchandise produced in a foreign country that is the subject of—
>
> > (i)   an antidumping duty order…
> >       or
> > (iii)  a countervailing duty order…,
>
> (B) before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise which—
>
> > (i)   is subject to such order or finding, or
> > (ii)  is produced in the foreign country with respect to which such order or finding applies,

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [     ]*

(C) the process of assembly or completion in the foreign country … is minor or insignificant,

(D) the value of the merchandise produced in the foreign country … is a significant portion of the total value of the merchandise exported to the United States, and

(E) the administering authority determines that action is appropriate under this paragraph to prevent evasion of such order or finding,

the administering authority… may include such imported merchandise within the scope of such order….

**(3) Factors to consider**

In determining whether to include merchandise assembled or completed in a foreign country in a countervailing duty order or an antidumping duty order or finding under paragraph (1), the administering authority shall take into account such factors as—

(A) the pattern of trade, including sourcing patterns,

(B) whether the manufacturer or exporter of the merchandise described in paragraph (1)(B) is affiliated with the person who uses the merchandise described in paragraph (1)(B) to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and

(C) whether imports into the foreign country of the merchandise described in paragraph (1)(B) have increased after the initiation of the investigation which resulted in the issuance of such order or finding.

Congress first codified the anticircumvention provisions through section 1321 of the Omnibus Trade and Competitiveness Act of 1988, P. L. 100-418, 102 Stat. 1107 (1988).  The provisions were modified by section 230 of the Uruguay Round Agreements Act, P. L. 103-465, 108 Stat. 4809 (1994). *See generally*, *Statement of Administrative Action Accompanying the Uruguay Round Agreements Act*, H.R. Doc. No. 103-316, vol. 1 at 892-895 (1994), reprinted in 1994 U.S.C.C.A.N. 4040 ("SAA").

In its proposed rules to implement the circumvention provision, Commerce explained:

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

> Commerce ''has been vested with authority to administer the antidumping laws in accordance with the legislative intent'' and, thus, ''has a certain amount of discretion {to act} . . . with the purpose in mind of preventing the intentional evasion or circumvention of the antidumping duty law.''

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 85 Fed. Reg. 49,472, 49,476 (Dep't Commerce Aug. 13, 2020) ("Draft Regulations"), quoting *Tung Mung Development Co., Ltd. v. United States*, 219 F. Supp. 2d 1333, 1343 (Ct. Int'l Trade 2002).

This appeal argues (1) that the AD anticircumvention inquiry under appeal was unlawful because a single product from a single country cannot lawfully be subject to two different AD orders; (2) that Commerce's decision with respect to the mandatory "factors to consider" under § 781(b)(3) is unsupported by substantial evidence and otherwise unlawful; and (3) that Commerce failed to articulate a reason why an affirmative determination was "appropriate to prevent evasion" of the Orders under § 781(b)(1)(E).  Al Jazeera does not contest Commerce's findings under §§ 781(b)(1)(A)-(D).

## II. Commerce Erred In Holding That A Single Product From A Single Country Can Lawfully Be Subject To Overlapping Antidumping Orders

CWP from Oman has been under an AD order since 2016; *see, Oman Order, supra*. CWP from China has been under an AD order since 2008; *see, China AD Order, supra*. As a consequence of the determination under appeal, CWP from Oman that is produced from Chinese HRS is subject to two AD orders: the *Oman Order* and the *China Order*.  Thus, for example, in an administrative review of the *Oman Order*, Al Jazeera would be required to report its U.S. exports, home-market ("HM") sales, and cost of production ("COP") for all standard pipe that Al Jazeera produced or sold during the review period. However, if Al Jazeera's CWP produced

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [      ]*

from Chinese HRS is nonsubject merchandise for purposes of an AD review of *CWP from Oman*, then Al Jazeera would be required to exclude such nonsubject merchandise from its U.S. sales, from its HM sales, and from its COP. Thus, even if Al Jazeera stopped using Chinese HRS for its U.S. sales, its HM sales and its production of CWP made from Chinese HRS would be subject to the *China AD order* and not to the *Oman order*.

Al Jazeera argued below that this state of affairs is untenable as a matter of law, and Commerce rejected Al Jazeera's arguments.

Al Jazeera began by citing Commerce's own precedent, which states that[8] –

> Circumvention inquiries by their nature necessarily concern merchandise that is not covered by the scope of an existing AD/CVD order.

Al Jazeera further argued (case brief at 6):

> Nothing in the statute allows a given product to be subject to more than one AD order at a time. To permit such a major, novel interpretation of the statute would require a clear expression of congressional intent,[9] which is lacking herein.

Al Jazeera further argued (*id*. at 10, citations omitted):

> The domestic interested parties (DIPs) are already protected from dumping of pipes from Oman. The margins on these pipes are precisely calibrated by the Department's margin calculations to offset any unfairness in the pricing of the goods. Thus, once entered into the United States, Al Jazeera's pipes are being traded at a fair market value; the dumping duties have eliminated any unfairness in the pricing.

---

[8] *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders*, 87  Fed. Reg. 19,071 (Dep't Commerce April 1, 2022), Initiation Memo at 13 (March 25, 2022) ("*Solar Cells China*"), quoted in AJSP case brief at 4.

[9] *West Virginia v. EPA*, 142 S. Ct. 2587, 2607–08 (2022).

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

Overlapping AD/CVD orders also affect sunset reviews.  If Al Jazeera's CWP produced from Chinese HRS is subject to the *China Order*, then it should presumably not be considered by the International Trade Commission in a sunset review of CWP from Oman.

In sum, Al Jazeera argued that the legal and practical consequences of overlapping dumping orders are so significant as to invalidate such a reading of the statute in the absence of a clear statement of contrary congressional intent, per *West Virginia v. Environmental Protection Agency*, 597 U.S. 697, 142 S. Ct. 2587 (2022).

Commerce addressed Al Jazeera's arguments, stating (FDM at 5-6):

> The statute does not prohibit Commerce from conducting a circumvention inquiry and making an affirmative circumvention determination on a country that is currently subject to its own AD or countervailing duty (CVD) order involving the same product.
>
> …
>
> {P}ursuant to section 781(b)(1)(E) of the Act, …, it is reasonable for Commerce to conclude that the wide disparity  between the rates for the two countries could provide an incentive to circumvent the Chinese AD/CVD *Orders* and that the rate from the Oman AD order may not be sufficient to prevent evasion of the Chinese AD/CVD *Orders* through Oman.  Therefore, an affirmative determination of circumvention is necessary to prevent evasion of the Chinese AD/CVD *Orders* through Oman.

Commerce's argument is tautological.  Commerce cites no statutory language, nor any administrative or judicial precedent, to support its contention – which constitutes a major extension of the AD law to previously uncharted waters – that CWP from Oman can be subject to CWP orders from both Oman and China simultaneously.  Under *Loper Bright, supra*, this Court should assess whether Commerce's interpretation of the statute is lawful.

Regarding Al Jazeera's reliance on *Solar Cells China,* Commerce asserts (FDM at 6, footnotes omitted):

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [     ]*

> Al Jazeera argues that, in the *Solar Cells China Circumvention Initiation*, Commerce stated that, "Circumvention inquiries by their nature necessarily concern merchandise that is not covered by the scope of an existing AD/CVD order." {  }  However, that quote needs to be considered under additional context. Specifically, in the following sentence, Commerce explains that this statement was made to counter an argument that a circumvention inquiry could not be initiated at all if the subject merchandise from a third country was currently not under the scope of an existing order,…

Commerce's argument does not meet Al Jazeera's objections. The "context" in which Commerce said this is irrelevant. Commerce states categorically that circumvention inquiries "*necessarily* concern goods not covered by an existing order." The agency has given no substantive reason to depart from the precedent; *see*, *Foshan Shunde, supra.*

Commerce also fails to meet Al Jazeera's practical concerns, by arguing that Al Jazeera already has the ability to track coil origin into pipes (FDM at 7):

> Commerce disagrees that complying with both the Omani AD order and the Chinese AD/CVD orders constitutes an undue administrative burden for Al Jazeera. It is Al Jazeera's responsibility to provide documentation to support any certification that the CWP it produced and exported to the United States does not use HRS sourced from China.

Commerce misses the point.  If Al Jazeera had an origin-tracking system for all sales and production, the company could readily construct a two-tier HM sales structure, in which the higher-priced CWP would be produced from Chinese HRS and lower-priced CWP would be produced from non-Chinese HRS.  Thus, Al Jazeera's high-priced HM sales would be permanently walled off from the margin calculations.

Finally, Commerce never addresses Al Jazeera's argument that the order on CWP from Oman already protects U.S. producers from any unfair pricing of Al Jazeera's exports. Commerce merely cites DIPs' case brief for the proposition that (FDM at 5):

> {I}f Commerce declined to find circumvention due to the mere existence of another order on the same goods in the country of

14                 *26-1061 AJSP Rule 56.2 Motion PUB.docx*

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [     ]*

> completion or assembly, such practice would allow producers subject to high duty rates to take advantage of lower duty rates in the country of completion or assembly, thereby circumventing the original order.

This argument suffers from the same circularity as Commerce's other assertions.

The foregoing shows the considerable consequences of allowing overlapping Orders on the same products from the same country. Al Jazeera urges the Court to reject Commerce's reading of the statute.

### III. Commerce's Final Determination As To The "Factors To Consider" Under § 781(b)(3) Is Not Supported By Substantial Evidence And Is Otherwise Unlawful

#### A. Pattern of Trade and Sourcing

##### 1. Commerce's Analysis Of Pattern of Trade

Section 781(b)(3)(A) requires Commerce to "take into account … the pattern of trade including sourcing patterns." The *Statement of Administrative Action Accompanying the Uruguay Round Agreements Act*, H.R. Doc. No. 103-316, vol. 1 at 894 (1994), reprinted in 1994 U.S.C.C.A.N. 4040 ("SAA"), clarifies "sourcing": "section 781(a)(3) also requires Commerce to consider changes in the sourcing pattern of parts used to produce the finished product."

Commerce defines the POI as 2019-2023, based on "when the requestors believed Al Jazeera's circumventing activity began," and the "comparison period" as 2014-2018.  FDM at 8-9.  Commerce analyzed U.S. imports of CWP from China and Oman in these periods from the following data (PDM at 15)[10]:

---

[10] Source: PDM at 15, citing DIPs' Request for Inquiry, Exh. 8.

*26-1061 AJSP Rule 56.2 Motion PUB.docx*

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

| TABLE 1<br>DOC PATTERN OF TRADE DATA<br>US IMPORTS OF CWP (MT) | | |
|---|---|---|
| YEAR | FROM CHINA | FROM OMAN |
| 2014 | 15,164 | 42,805 |
| 2015 | 31,633 | 36,352 |
| 2016 | 85,036 | 25,535 |
| 2017 | 53,974 | 43,762 |
| 2018 | 21,748 | 48,719 |
| 2019 | 10,671 | 51,066 |
| 2020 | 7,813 | 33,906 |
| 2021 | 12,914 | 53,390 |
| 2022 | 12,993 | 58,376 |
| 2023 | 17,816 | 44,387 |
| COMP PERIOD | 207,555 | 197,173 |
| POI | 62,207 | 241,125 |
| POI – COMP | (145,348) | 43,952 |
| Change % | -70.0% | 22.3% |

Commerce's explains (PDM at 14, footnote omitted)[11]:

> A comparison of the U.S. import data for the five-year periods indicates that the cumulative quantity of U.S. imports of CWP from Oman from the comparison period to the period of inquiry, increased from 197,172 MT to 241,124 MT (*i.e.,* an increase of 22.29% or 43,952 MT). In contrast, the cumulative quantity of U.S. imports of CWP from China decreased during this period, from 207,554 MT in the comparison period to 62,207 MT in the period of inquiry (*i.e.,* a decrease of 70.03% or 145,347 MT).

Commerce also considered Al Jazeera's sales for the POI, PAM at 5[12]:

| TABLE 2<br>AJSP SALES OF CWP (MT) | | |
|---|---|---|
| YEAR | TO USA | TO DOMESTIC + 3RD COUNTRIES |
| 2019 | [    ] | [    ] |
| 2020 | [    ] | [    ] |
| 2021 | [    ] | [    ] |
| 2022 | [    ] | [    ] |
| 2023 | [    ] | [    ] |
| Total | [    ] | [    ] |

---

[11] Citing DIPs' Request for Inquiry Exh. 8.

[12] Citing SQR#2 Exh.1, C.R. 6.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [     ]*

Commerce's analysis of the data in Table 2 is (PAM at 4):

> Al Jazeera's U.S. sales of CWP [     ] from 2019-23 while home
> and third country sales [     ].

Commerce concludes, PDM at 15:

> Based on the information on the record, we find that the
> patterns of trade examined weigh in favor of an affirmative
> circumvention determination.

## 2.  Commerce's Analysis Of Sourcing

In regard to Al Jazeera's sourcing of HRS, Commerce found (PAM at 5):

> During the period of inquiry (*i.e.,* 2019-2023), Al Jazeera
> reported sourcing HRS from multiple countries other than China: [
> ]{[13]}. China accounts for [     ]% ([     ] MT) of its total HRS
> purchases ([     ] MT) during the period of inquiry.{[14]} Specifically,
> Al Jazeera purchased [     ]% of its total HRS purchases from China
> in 2019, [     ]% in 2020, [     ]% in 2021, [     ]% in 2022, and [
> ]% in 2023 for an overall average of [     ]% of total HRS purchases
> during the period of inquiry.{[15]}  Additionally, Al Jazeera continues
> to purchase an [     ], from January to September 2024 [     ]% of Al
> Jazeera's purchases of HRS came from China.{[16]}

Commerce tabulates Al Jazeera's sourcing data as follows, PAM at 5[17]:

---

[13] Citing IQR Exh. 11.

[14] Citing IQR Exhs. 11, 12.

[15] Citing *id*.

[16] Citing IQR Exh. 35. The figures are from Table 3.

[17] Citing SQR#2 Exh. 1. We added the last row of the table from Commerce's narrative, PAM at
5 citing IQR Exh. 35.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

| TABLE 3. DOC'S TABULATION OF AJSP SOURCING DATA (JAZEERA HRS PURCHASE DATA, MT) | | | |
|---|---|---|---|
| Year | From China | From 3rd Countries | China Share (%) |
| 2019 | [  ] | [  ] | [  ] |
| 2020 | [  ] | [  ] | [  ] |
| 2021 | [  ] | [  ] | [  ] |
| 2022 | [  ] | [  ] | [  ] |
| 2023 | [  ] | [  ] | [  ] |
| POI SUBTOTAL | [  ] | [  ] | [  ] |
| 2024:01-09 | | | [  ] |

Commerce does not claim to rely on any data other than those in Table 3 for its conclusion that Al Jazeera's sourcing supports a finding of circumvention.

## B. Commerce's Analysis Is Legally And Factually Deficient

### 1. Commerce's Pattern Of Trade Analysis Is Legally And Factually Deficient

Regarding the pattern-of-trade data in Table 1, Commerce found that, in the five years of the POI, U.S. imports of CWP from Oman increased by 22.3% versus the comparison period, while imports from China fell by 70.0%. Graphically:



Fig. 1. DOC COMPARISON OF 5-YR PERIODS (MT)

Source: DOC pattern of trade data.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

Commerce does not explain why this indicator supports a finding of circumvention.  The mere fact that imports from Oman increased modestly in one five-year period compared to another, while imports from China decreased across the same two ranges, does not show any connection of any kind between imports from Oman and those from China.[18] Commerce cites no evidence to support any connection between these two events, nor does Commerce explain why taking five-year totals – which mask substantial movements within the respective periods – is an adequate substitute for more detailed analysis. We can see the detailed annual movements inside Commerce's five-year blocs in Fig. 2, from the data in Table 1 (AJSP Initial Comments at 9, C.R. 77, P.R. 120; AJSP case brief at 17):



As apparent in Fig. 2, imports from Oman and China show inverse movements in 2014-2018, and roughly parallel movements in 2019-2023. If, as DIPs claim, circumvention began in 2019, then one would expect that, as Oman imports increased, imports from China would have

---

[18] If Mr. Smith in Brooklyn lost 50 pounds in the POI versus the comparison period, while Mr. Jones in Philadelphia gained 15 pounds, no one would claim, without more, that their weight gain and loss were related to each other.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [     ]*

decreased. However, the opposite is clearly the case: in the POI, imports from both countries were roughly in parallel. This is inconsistent with the proposition that China was funneling increasing volumes of HRS into Oman to offset its volume lost because of the *China Orders*.

In fact, as Fig. 2 shows, imports from China gyrated widely in the comparison period, when DIPs make no claim as to circumvention, with a huge spike in 2016 and an equally precipitous decline through 2017 into 2018.  Then, during the POI, when DIPs claim circumvention was occurring, imports from China were flat, hovering at 10,000 to 13,000 MT for four years before reaching about 18,000 MT in 2023. Both China and Oman show a dip in 2020 – when Covid depressed economic activity everywhere – following which Oman regained its lost volume in 2021 and 2022, while imports from China remained flat.  In 2023 – the year of Oman's highest reliance on Chinese HRS – imports from Oman fell by 23.97%, while imports from China *increased* by 37.2% (calculated from Table 1, *supra*).

Thus, when we disaggregate the five-year blocs, the data show no relationship between CWP imports from Oman and China.  In fact, during the year of "peak" circumvention – namely, 2023, when roughly two-thirds of Al Jazeera's HRS was Chinese origin (Table 3, above) – imports from Oman *fell* by 24% while imports from China *increased* by 37%. In short, Commerce's five-year-bloc analysis masks the actual movements of import activity.

The ultimate question is whether these movements are dispositive as to patterns of trade. Commerce concluded that the comparison of the full five-year blocs (Fig. 1, above) supports a finding of circumvention.  However, Commerce's finding is controverted by the very evidence on which the agency relies.  This Court is obliged to consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'"  *Nippon Steel*, 337 F.3d at 1379.  Commerce's decisions may not rest on "isolated

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

tidbits" of evidence. *USX Corp.,* 655 F. Supp. at 489. Al Jazeera urges this Court to find that Commerce's *ipse dixit* approach – taking two numbers and finding a relationship that is controverted by a more detailed analysis – fails to reflect a "logically reasoned and well-researched approach," as required by *Save Domestic Oil,* 357 F.3d at 1289.

What remains of Commerce's pattern-of-trade analysis is its analysis of Al Jazeera's export volumes, shown in Table 2, above. Commerce's analysis covers only the POI, and the agency found that, "Al Jazeera's U.S. sales of CWP [    ] from 2019-23 while home and third country sales [    ]." PAM at 4. Commerce never explains why a [    ] in imports from Oman would be consistent with circumvention, when the reverse is clearly the case.

Al Jazeera's CWP shipments by destination are shown in Fig. 3 (IQR Exh. 30, C.R. 29):

[



Fig. 3. AJSP SHIPMENTS BY DESTINATION (MT)

Source: IQR Exh. 30

]

The trendlines in Fig. 3 show that Al Jazeera's U.S. shipments were basically flat over the POI, while its shipments to domestic and third-country markets had a markedly positive slope. If, as DIPs allege, "Chinese producers and exporters are shipping ever-increasing volumes of HRS to Oman … to avoid paying the significantly higher duty rates applicable to imports

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

under the *China CWP Orders*" (DIPs' Request at 7-8), then one would expect that Al Jazeera's U.S. shipments would grow faster than its shipments to the home market and other export markets. The fact that this is clearly not the case controverts the claim that Al Jazeera's shipments are consistent with circumvention.

This is particularly the case since, as shown in Table 3, Al Jazeera did not even begin to buy an appreciable volume of Chinese HRS until 2023 – a year in which Al Jazeera's U.S. shipments showed no growth at all (Fig. 3), while its domestic and third-country shipments increased substantially. Clearly, Al Jazeera's purchases of Chinese HRS had no impact on the volume of its U.S. sales.

Commerce states (PDM at 15) (footnotes omitted):

> We also analyzed patterns of trade with respect to Al Jazeera from 2019-2023. Al Jazeera provided quantity and value information of: … (3) its entries and sales of CWP to the United States, for the period of inquiry. … {W}e find that the patterns of trade examined weigh in favor of an affirmative circumvention determination.

Notably, in its final decision memo, Commerce does not even mention Al Jazeera's shipments data – which are inconsistent with circumvention – but pins its entire determination on the U.S. import statistics per Table 1/Fig. 1, above. FDM at 14 (footnotes omitted):

> In our Preliminary Determination, we concluded that the patterns of trade weigh in favor of an affirmative circumvention determination. By comparing publicly available U.S. import statistics of CWP from the comparison period and the POI, we found that U.S. imports of CWP from Oman from the comparison period to the POI increased from 197,172 MT to 241,124 MT (i.e., an increase of 22.29%) and, in contrast, U.S. imports of CWP from China decreased during this period, from 207,554 MT in the comparison period to 62,207 MT in the POI (*i.e.,* a decrease of 70.03%). … We continue to determine that these factors, as well as an analysis of Al Jazeera's quantity and value information, weigh in favor of an affirmative circumvention determination.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

In short, Commerce's pattern-of-trade determination turns on the oversimplification shown in Fig. 1:



The evidence in Fig. 1, standing alone, is insubstantial: comparing two bar graph elements does not establish or even suggest any sort of relationship between them.

Furthermore, Commerce ignores the quantum of evidence needed to establish circumvention that Commerce, itself, had articulated as a longstanding practice, in the *India/Oman* case. There, Commerce required a "clear, definitive changing pattern of trade" and a "substantial and consistent shift" as prerequisites for circumvention (*India/Oman* PDM at 22, emphases added):

> Commerce has a ***practice*** of establishing a ***clear changing pattern of trade*** for affirmative circumvention determinations. In this instance, the pattern of trade during the period being considered does not show any ***clear or definitive changes*** that would be consistent with an affirmative determination…. {T}his alleged link has not resulted in any ***substantial and consistent shift*** with the pattern of trade. Therefore, we preliminarily find that the pattern of trade does not support an affirmative circumvention determination.

Case 1:26-cv-01061-MAB    Document 25    Filed 07/25/26    Page 30 of 62
*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

Commerce cited a significant body of precedents to show that its requirement for a "clear changing pattern of trade" constituted a "practice."[19] Thus, Commerce placed the burden on the DIPs "to demonstrate a *coherent changing pattern* of trade or *link higher Indian company-specific cash deposit rates to increased exports* from Oman and the UAE." *India/Oman* PDM at 21 (emphasis added).

In its Final Decision Memo, Commerce eschewed any evidentiary standard whatsoever, stating (FDM at 13, footnotes omitted):

> First, relying on the *India Circumvention*, Al Jazeera states that Commerce's precedent permits an affirmative determination of circumvention only if there is a "clear changing pattern of trade" and a link between the higher deposit rates on CWP from China and the volume of imports from Oman that present a "substantial and consistent shift with the pattern of trade. Al Jazeera also states that Commerce's analysis must be undertaken as a "holistic, systematic analysis of all the provisions of section 781(b) of the Act."
>
> We disagree. Section 781(b)(3) of the Act only requires that the administering authority "take into account" certain factors, and patterns of trade are only one such factor that Commerce considers in a circumvention determination.

---

[19] *Id.*, citing, *e.g.*, *Corrosion-Resistant Steel Products from the People's Republic of China: Affirmative Preliminary Determination of Circumvention Involving the United Arab Emirates*, 85 Fed. Reg. 8,841 (Dep't Commerce Feb. 18, 2020), unchanged in *Corrosion-Resistant Steel Products from the People's Republic of China: Affirmative Final Determination of Circumvention Involving the United Arab Emirates*, 85 Fed. Reg. 41,957 (Dep't Commerce July 13, 2020) ("*CORE China/UAE*"); *Uncoated Paper from Brazil: Affirmative Preliminary Determination of Circumvention of the Antidumping Duty Order for Uncoated Paper Rolls*, 86 Fed. Reg. 7,261 (Dep't Commerce Jan. 27, 2021), unchanged in *Uncoated Paper from Brazil, the People's Republic of China, and Indonesia: Affirmative Final Determinations of Circumvention of the Antidumping Duty Orders and Countervailing Duty Orders for Certain Uncoated Paper Roll*, 86 Fed. Reg. 71,025 (Dep't Commerce Dec. 14, 2021); *Oil Country Tubular Goods from the People's Republic of China: Preliminary Affirmative Determinations of Circumvention*, 86 Fed. Reg. 43,627 (Dep't Commerce Aug. 10, 2021), unchanged in *Oil Country Tubular Goods from the People's Republic of China: Final Affirmative Determinations of Circumvention*, 86 Fed. Reg. 67,443 (Dep't Commerce Nov. 26, 2021).

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

Commerce thus acknowledges that the *India/Oman* evidentiary standard does not inform its judgment.  Remarkably, Commerce not only rejects its own requirement for a "clear changing pattern of trade" but goes so far as to reject the notion that there must be a link between the deposit rates in China and the volume of imports from Oman, and then simply denies that there is any need for the agency to conduct a "systematic analysis."  To reject the need for a systematic analysis is to reject the rule of law entirely and make every case *ad hoc*.

The statute has not changed since *India/Oman*, and respondent Al Jazeera here is the same as respondent Al Jazeera in the *India/Oman* case.  Al Jazeera therefore has a substantial reliance interest in the application of a consistent standard. Thus:

> {W}hen deviating from a past practice or policy, an agency 'must "be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account."' *Id.* {*Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 140 S. Ct. 1891, 207 L. Ed. 2d 353 (2020)}, (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222, 136 S. Ct. 2117, 195 L. Ed. 2d 382 (2016)).

*Ellwood City Forge Co. v. United States*, 788 F. Supp. 3d 1317, 1322 (Ct. Int'l Trade 2025); *see also*, *Bonney Forge Corp. v. United States*, 2025 Ct. Intl. Trade LEXIS 59 * at 13; SLIP OP. 25-56 (May 6, 2025).  Without such consistency across the cases in which it is a respondent, Al Jazeera is unable to ensure that it is complying with the law. In any event, Commerce has not shown any reason for its deviation from the *India/Oman Circumvention* standard; *see*, *Foshan Shunde Yongjian,* 896 F. Supp. 2d at 1325 ("agency action is arbitrary when the agency offers{s} insufficient reasons for treating similar situations differently.").

### 2. Commerce's Pattern of Sourcing Analysis Is Legally And Factually Deficient

Commerce's consideration of changes in the patterns of Al Jazeera's sourcing of HRS is likewise legally and factually inadequate.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

In its case brief at 30-31, Al Jazeera summarized its purchasing practice (footnotes omitted):

> Al Jazeera has an unvarying procedure for sourcing its HRS inputs. Al Jazeera's Purchasing Committee continuously monitors the company's HRS inventory, and when conditions require it, the Committee send bids to different suppliers and traders from its internal list of qualified suppliers. The suppliers and traders then send their proposals to Al Jazeera, stating quantity, price, and delivery schedule. Al Jazeera then reviews the proposals from the various offerors, elects the best available proposal, and issues a proforma invoice accordingly.

Thus, it is Al Jazeera that initiates HRS purchases by requesting bids from its qualified suppliers when its inventory position requires it.

In the Final Decision Memo, Commerce states, FDM at 18-19 (footnotes omitted):

> Al Jazeera further elaborates that it is not purchasing Chinese HRS as part of a circumvention scheme; rather, according to Al Jazeera, the diversity of its suppliers and trading companies indicates the ebb and flow of input sourcing in a dynamic trading environment.
>
> Domestic interested parties contend that Al Jazeera's intent in purchasing Chinese HRS and exporting finished CWP into the United States is not one of the statutory elements for a circumvention.
>
> We agree with the domestic interested parties. As previously stated in *CORE China (UAE):* "nowhere does the statute indicate that . . . a respondent in the third country must have the 'intent' to evade duties."

Commerce mischaracterizes Al Jazeera's argument.  Al Jazeera asserts that the consistency of its purchasing practice weighs against a finding that there has been a change in Al Jazeera's sourcing patterns.  While the sources of its purchases may ebb and flow, the practices in Al Jazeera's Purchasing Committee are consistent. Hence, changes in the composition of Al Jazeera's HRS supply are not the result of circumvention but, rather, of normal marketplace changes.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

In any event, it is disingenuous for Commerce to pretend that intent has no place in the circumvention analysis. *See*, *Draft Regulations*, *supra*; *Tung Mung*, 219 F. Supp. 2d at 1343 ("preventing *intentional* evasion or circumvention…")  Indeed, the entire case is predicated on intent.  DIPs assert in their Request for Inquiry (at 7-8), that "Chinese producers and exporters are shipping ever-increasing volumes of HRS to Oman to … *avoid* paying the significantly higher duty rates applicable to imports under the China CWP Orders."  (Emphasis added.) "Avoid" is the language of intent; it infuses the entire case. Moreover, as DIPs assert, the focus should be on whether the Chinese suppliers are trying to circumvent the *China CWP Orders,* regardless of Al Jazeera's purchasing protocols. Here, there is no evidence of any concerted activity by Chinese HRS producers to increase their volume to Oman to evade the *China Orders*.

Commerce also erred in declining to consider trade statistics proffered by Al Jazeera.

Commerce maintains statistics on steel imports under its Steel Import Monitoring and Analysis ("SIMA") System, 19 C.F.R. Part 360, which requires importers to report not only the country where the imported article was produced but also the country where the steel input was melted and poured. DIPs relied in part on SIMA statistics in their Request for Inquiry, *supra*, at 7 and Exh. 6.

Al Jazeera provided SIMA statistics from the beginning of the SIMA system in late 2020 through 2024-Q4,  IQR Exh. 34 (C.R. 25, P.R. 51), summarized in Fig. 4, IQR at 35:

*26-1061 AJSP Rule 56.2 Motion PUB.docx*

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [     ]*



Fig. 4. US Imports of CWP from Oman by Country of Melt and Pour (% Share)

Source: IQR at 35.

As shown in Fig. 4, Al Jazeera[20] had largely relied on Indian and third-country HRS into the third quarter of 2023, when the company's reliance turned to China. For the next three quarters, China remained the dominant supplier, replaced largely by Indian HRS in 2024:Q2-Q3 and completely replaced by Indian HRS in 2024:Q4. In its case brief at 14, Al Jazeera argued that the SIMA statistics show that Al Jazeera's predominant use of Chinese HRS was "a transitory phenomenon that was rebalanced in the months immediately following the POI...."

During the portion of the POI covered by the SIMA statistics, namely, 2020:Q4 – 2023:Q4, Omani imports made from Chinese HRS predominated in three of the 13 quarters. Thus, while DIPs asserted that China began circumventing the *China* Orders in 2019 (*see* DIPs' Request at 6-7), there were, in fact, zero or minimal U.S. imports of Omani pipe produced from Chinese HRC during 77% of the quarters (10 of 13) covered by the SIMA statistics.

---

[20] Al Jazeera is the sole Omani exporter of CWP to the U.S., so the SIMA Oman data reflect Al Jazeera's shipments.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

Commerce never made any substantive analysis of the SIMA statistics, even for the 13 months inside the POI.

Furthermore, Commerce declined to consider the SIMA statistics outside the POI, namely, 2024:Q1–Q3.

The full SIMA statistics, through 2024:Q4, undeniably show that Al Jazeera's reliance on Chinese HRS substantially subsided in 2024:Q2–Q3 and fell to near-zero in 2024:Q4 (see Fig. 4).

Commerce's failure to consider the SIMA statistics because they include data from outside the POI is unlawful as an abuse of discretion.

The timing of the instant case made it particularly apt for reliance on post-POI data. DIPs filed their Request for Inquiry in July 2024, at which time a POI ending in December 2023 was logical. However, Commerce did not initiate the inquiry until November 2024; *Initiation Notice*, *supra*, and did not issue the questionnaire until February 2025, *supra*. By that time, robust data were available, from Al Jazeera and elsewhere, for the full year 2024.

The unusual timespan between the filing of the DIPs' Request and the issuance of the questionnaire does not compel Commerce to alter the POI; however, it underscores the fundamental unfairness of Commerce's refusal to consider post-POI information in its final determination, particularly where the information played into Commerce's obligation to consider evidence that "'fairly detracts from the substantiality of the evidence.'" *Nippon Steel,* 337 F.3d at 1379.

The centrality of the SIMA statistics is further evident when we compare the instant inquiry with the *India/Oman* inquiry two years earlier. In *India/Oman*, U.S. imports of CWP from Oman showed India as the country of melt and pour for six calendar quarters, as shown in

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

Fig. 1, above. Al Jazeera's HRS purchase data in the present case also showed Indian HRS to be dominant in four consecutive years, 2019-2022, as shown in Fig. 5 (IQR Exh. 35, C.R. 25):

[

]

In the *India/Oman* case, Commerce found that the foregoing data did not support a finding of circumvention vis-à-vis India (emphases added):

> Commerce has a ***practice of establishing a clear changing pattern of trade*** for affirmative circumvention determinations. In this instance, the pattern of trade during the period being considered does not show any ***clear or definitive changes*** that would be consistent with an affirmative determination.

*India/Oman PDM* at 22 (unchanged in *India/Oman Final*). On a record not very different here – compare China 2024 with India 2022 (the peak years for the respective countries) – Commerce reached the opposite conclusion here, with no explanation for the difference.

In the present case, Commerce also failed to consider the impact of the pendency of the *India/Oman Inquiry* on Al Jazeera's sourcing. The pendency of that inquiry from early 2022 through the first quarter of 2023[21] limited India's viability as an HRS supplier since it would

---

[21] *See*, *Certain Welded Carbon Steel Standard Pipes and Tubes From India: Initiation of Circumvention Inquiry on the Antidumping Duty Order*, 87 Fed. Reg. 9,571 (Dep't Commerce Feb. 22, 2022); *India/Oman Circumvention Final, supra* (March 2023).

*26-1061 AJSP Rule 56.2 Motion PUB.docx*

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

have been imprudent for Al Jazeera to buy Indian HRS while the *India/Oman* case was pending.

Commerce fails to consider this change in Al Jazeera's pattern of sourcing.

Nor are the SIMA statistics the only sourcing data that Commerce ignored. During the

POI, Al Jazeera's U.S. entries of CWP reflected the ratios of Al Jazeera's CWP produced from

Chinese HRS shown in Table 4 (AJSP IQR Exh. 9) (C.R. 49):

| TABLE 4 AJSP U.S. ENTRIES PRODUCED FROM CHINESE HRS | |
| --- | --- |
| Year | Share of AJSP U.S. exports made from Chinese HRS |
| 2019 | [    ]% |
| 2020 | [    ]% |
| 2021 | [    ]% |
| 2022 | [    ]% |
| 2023 | [    ]% |

Thus, in four of the five years of the POI, substantially less than one-quarter of

Al Jazeera's U.S. shipments were produced from Chinese HRS. Commerce completely ignored

the fact that the China HRS share of Al Jazeera's U.S. shipments was inconsistent with

circumvention during 80% of the POI.

Commerce also failed to consider the implications of Al Jazeera's HRS sourcing during

the POI and comparison period, as shown in Table 5, IQR at Exh. 11 (C.R. 49):

| TABLE 5 AJSP COIL PURCHASES, SHARE OF TOTAL | | | | | |
| --- | --- | --- | --- | --- | --- |
| YEAR | | CHINA | INDIA | RUSSIA | OTHERS |
| 2014 | [ | % | % | % | % ] |
| 2015 | [ | % | % | % | % ] |
| 2016 | [ | % | % | % | % ] |
| 2017 | [ | % | % | % | % ] |
| 2018 | [ | % | % | % | % ] |
| 2019 | [ | % | % | % | % ] |
| 2020 | [ | % | % | % | % ] |
| 2021 | [ | % | % | % | % ] |
| 2022 | [ | % | % | % | % ] |
| 2023 | [ | % | % | % | % ] |

*26-1061 AJSP Rule 56.2 Motion PUB.docx*

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

Commerce fails to address the fact that the share of HRS that Al Jazeera sourced from China in 2014, at the start of the comparison period, was smaller than its share in 2023, the end of the POI. When we consider AJSP's coil sourcing under Commerce's preferred methodology of creating five-year blocs, Al Jazeera's imports of HRS from China *decreased* in the POI versus the comparison period, *id*.:

| TABLE 6 | | | | | | |
|---|---|---|---|---|---|---|
| **AJSP COIL PURCHASES, SHARE OF TOTAL** | | | | | | |
| **PERIOD** | | **CHINA** | **INDIA** | **RUSSIA** | **OTHERS** | |
| 2014-2018 | [ | % | % | % | % | ] |
| 2019-2023 | [ | % | % | % | % | ] |

This decrease in Al Jazeera's purchases of Chinese HRS controverts Commerce's finding that Al Jazeera's sourcing pattern supports an affirmative determination.

The law requires the Court to consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Nippon Steel,* 337 F.3d at 1379.  Here, Commerce has selectively cited to portions of the record that support an affirmative determination while ignoring the overwhelming data to the contrary.

Coming back to Commerce's treatment of the SIMA statistics through 2024-Q4, Commerce's rejection of the SIMA analysis relied on misstatements of the law.

Commerce sets forth the issue this way (FDM at 18-19, footnotes omitted):

> Al Jazeera contends that its shift to purchasing HRS from China was not part of a consistent shift, but a transient, short-term phenomenon. Al Jazeera cites to a Steel Import Monitoring and Analysis (SIMA) system report, which it argues demonstrates that Omani and Chinese standard pipe volumes are moving in response to the same market signals. According to Al Jazeera, this means that Omani pipe is not replacing Chinese pipe from the market; rather both countries are responding to the same demand-pull in their respective niches:

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

> Furthermore, the SIMA statistics show that Oman's reliance on Chinese HRS was a short-term phenomenon: it started as zero at the beginning of the reporting period for SIMA statistics (2020:Q4) and had substantially dissipated by the end of 2024. While it is undeniable that Al Jazeera showed a substantial reliance on HRS from China during the middle of this period, with shares of CWP made from Chinese HRS reaching 88% in 2024:Q1 before subsiding to 1.6% in 2024:Q4, these movements do not constitute "a clear changing pattern of trade" or a "substantial and consistent shift with the pattern of trade," as required by the India Circumvention PDM, *supra*. These are simply transient phenomena that arise from events outside Al Jazeera's control, such as the internal increase in demand for HRS in India which caused Al Jazeera to shift its purchases to China in 2023.
>
> …
>
> Domestic interested parties contend that Al Jazeera's intent in purchasing Chinese HRS and exporting finished CWP into the United States is not one of the statutory elements for a circumvention.
>
> We agree with the domestic interested parties.

Commerce thus rejects Al Jazeera's argument that the company's reliance on Chinese coils was transitory in nature, on the ground that "intent" is not part of the statutory scheme.

Commerce's analysis is inconsistent with the law.

The analysis of changing pattern of sourcing requires Commerce to find "patterns," *i.e.*, an "arrangement of parts, elements or details that suggests a design or orderly distribution." *Webster's New International Dictionary of the English Language,* 2d. Ed. Unabridged (1959). Whether there is a "pattern" to Al Jazeera's sourcing of HRS from China does not turn on intent, but only on the orderliness of the data, *i.e.,* whether the data themselves show a pattern. Here, it is clear that the pattern is of the transitoriness of Al Jazeera's sourcing.  In 2014, Al Jazeera bought [    ]% of its HRS from China, with the balance from [    ]. Table 4, *supra*. A decade of various movements brought Al Jazeera's share of HRS from China in 2024 to [    ]%, with the

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [     ]*

balance from [     ]. *Id*. During the intervening years, China fell to [     ]% in 2015, with several years of further decline followed by an increase to [     ]% in 2022 and ending, as stated, at [     ]% in 2023. China's supply of HRS to Al Jazeera thus shows nothing more than transitory fluctuations: the over-60% share of 2014 fell to less than 10% in 2020, before coming back to over 60% in 2023. There is no pattern here suggesting, as DIPs claim, that China began circumventing the *China* orders in 2019 and continued to do so through 2023.

The data in Table 5, *supra*, based on Commerce's predilection for five-year blocs, further dispel any notion of the existence of a pattern. In fact, Al Jazeera bought substantially less HRS, in percentage terms, from China in the POI than in the comparison period – again dispelling any claim of circumvention.

The foregoing is without regard to "intent"; the pattern shown by the data is simply a transitory fluctuation.

Commerce's other big objection to the SIMA statistics provided by Al Jazeera is that they contain data outside the POI, specifically, quarterly data for 2024. Commerce explains (FDM at 10, emphasis added):

> Commerce has the legitimate authority to focus solely on the POI and comparison period without being compelled to review other time periods during the circumvention proceeding.

Thus, Commerce explicitly declined to consider the SIMA statistics for 2024 in its analysis. Those statistics show that Al Jazeera substantially reduced its reliance on Chinese HRS as 2024 progressed, as shown in Fig. 4, *supra*, reproduced here for convenience:

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*



Source: IQR at 35.

Obviously, the SIMA data for 2024 substantially undermine Commerce's finding that Chinese HRS producers are increasingly routing HRS through Oman to make up for lost volume on Chinese CWP exports.

Al Jazeera contended that its reliance on the SIMA 2024 data was justified, *inter alia*, because Commerce, itself, cited 2024 data in its preliminary analysis memo; Commerce disagreed, stating (FDM at 10):

> The 2024 data that was referenced in the preliminary analysis memorandum was merely an additional data point for that document and was not used in any of the analysis conducted in the preliminary determination memorandum.

Al Jazeera urges the Court to reject the notion that some portions of Commerce's decisional documents are no more than "additional data points" that did not enter into the agency's consideration. If the additional data points were not material – if they did not enter into Commerce's consideration – then Commerce had no reason to mention them.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

More broadly, Al Jazeera urges this Court to reject the notion that Commerce's control over the definition of the POI and comparison period precludes interested parties from providing data from outside the POI and justifies Commerce's refusal even to consider such data.

The POI for the *India/Oman* circumvention inquiry was 2017-2020, with a comparison period of 2013-2016, based on the periods "proposed by the domestic interested parties." *India IDM* at 22. However, Commerce's analysis of pattern of trade in *India/Oman* covered a different period, 2017-2021. *Id*. Thus in the *India/Oman* inquiry, Commerce examined a period fully one year beyond the POI. There, Commerce did not hesitate to rely on post-POI statistics (*id*., footnotes omitted, emphasis added):

> We continue to find that U.S. imports of pipe and tube from India increased by more than twice the rate than imports from Oman and the UAE during the inquiry period. Additionally, ***when we include 2021 in the comparison periods***, U.S. imports from India have increased at more than three times the rate than from Oman and twice the rate from the UAE.

Nor was this a one-off. Commerce further referred to one respondent's post-POI HRS purchases (in 2021) to controvert DIPs' argument that the respondents' purchases were inversely variant with its suppliers' AD deposit rates (*id*. at 25, footnotes omitted, emphasis added):

> {T}he domestic interested parties allege that the Indian HRS supplier that supplied a majority of {respondent} Ajmal's Indian-origin HRS purchases ***in 2021*** had a high company-specific cash deposit rate under the Order. However, the … cash deposit disparity that the domestic interested parties allege here is non-existent.

Thus the POI is not nearly as sacrosanct as Commerce suggests.

Moreover, there are specific facts in the present inquiry that support consideration of the 2024 SIMA statistics. Here, the DIPs filed their Request for Inquiry in July 2024 but Commerce

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

did not issue the questionnaire until February 2025; Al Jazeera filed its IQR in March 2025.[22]

By this time, 15 months had elapsed since the end of the POI.  As it did in the *India/Oman* case,

Commerce could readily have examined import data, including the proffered SIMA statistics, for

the year following the nominal POI.

Furthermore, the SIMA 2024 data largely relate to Al Jazeera's activity inside the POI.

Al Jazeera's lead time from placing an order with a foreign HRS supplier order until delivery is

about three months,[23] and the time lag for Al Jazeera's pipe export shipments is two to four

months from the order date.[24]  Hence, the SIMA statistics for 2024:Q1 would reflect Al Jazeera's

HRS sourcing in 2023:Q3, and SIMA statistics for 2024:Q2 would reflect Al Jazeera's sourcing

in 2023:Q4, both inside the POI.

In the *China/UAE CORE* inquiry, Commerce stated[25]:

> Contrary to {respondent} AGIS's claim that the period was
> arbitrarily set, the period keys off the initiation of the underlying
> investigations and also takes into account the date of the
> preliminary determination in the AD investigation. … Aside from
> its unsupported allegation that the periods of inquiry were set
> arbitrarily, *AGIS has not argued why some other period provides a*
> *more probative basis for examining whether circumvention*
> *occurred*.

Here, in contrast to *China/UAE CORE*, Al Jazeera has argued that consideration of the

2024 SIMA statistics provides a "more probative basis for examining whether circumvention

occurred," since the 2024 data represented a significant departure from the 2023 data.

---

[22] Part of this extraordinary delay was that Commerce tolled all activity by 47 days because of the government shutdown.  P.R. 12.

[23] *See*, IQR Exh. 23A (Feb. 5, 2023 purchase order; April 20, 2023 date of importation into Oman) (C.R. 43); Exh. 23B (P.O. April 18, 2023; U.S. entry date July 24, 2023) (C.R. 42).

[24] *See*, IQR Exh. 32A, P.O. date Dec. 18, 2020; entry date  April 9, 2021 (C.R. 28); Exh. 32B, P.O. date April 9, 2020; entry date May 21, 2020 (C.R. 27); Exh. 32C, P.O. date Aug. 3, 2022; entry date Nov. 18, 2022 (C.R. 26).

[25] *CORE China/UAE*, *supra,* at 27 (emphasis added).

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

Nothing in Al Jazeera's argument prevents Commerce from establishing the POI and comparison period according to its usual practice.  However, doing so does not absolve Commerce from its responsibility to consider the record as a whole, including probative information that detracts from the agency's result.  The chief goal of the statute is accuracy; *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990); Commerce must rely on information to produce "the most accurate result." *Union Steel Mfg. Co. v. United States*, 837 F. Supp. 2d 1307, 1317 (Ct. Int'l Trade 2012). Here, to the extent the 2024 SIMA statistics are inconsistent with a finding of circumvention, *Rhone Poulenc* and its progeny require Commerce to take them into account.

Commerce also overlooked a further aspect of the patterns of Al Jazeera's HRS sourcing, namely, Al Jazeera's consistency in sourcing Chinese HRS from numerous trading companies that, in turn, source from numerous producers.  Al Jazeera sourced Chinese HRS from a dozen different unaffiliated trading companies in the POI (IQR Exh. 11, C.R.49):

[



]

Of these, no single trader supplied a predominant share (*id*.):

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

[

]

Moreover, Al Jazeera's 12 different trading-company suppliers purchased the steel from 13 different Chinese steel mills (*id*.):

[

]

None of those producers had anything close to a predominant share of Al Jazeera's total purchases of Chinese HRS:

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

[



]

Al Jazeera's actual sourcing decisions do not show any change in the pattern of sourcing during the POI. Throughout, Al Jazeera bought Chinese HRS from a number of international trading companies which, in turn, sourced HRS from a number of Chinese producers. In this regard, therefore, there was no change in the pattern of sourcing during the POI.

Moreover, the changes in sourcing do not show that Chinese HRS exporters or producers acted in concert to increasingly route HRS through Oman to make up for lost tonnage on pipe exports to the United States. The sheer number of different supplier/producer combinations precludes any finding of an effort to evade the *China CWP Orders*.

In sum, Commerce's analysis of changes in Al Jazeera's pattern of sourcing is factually inadequate and legally inadequate. Accordingly, Al Jazeera asks the Court to remand the matter for reconsideration of patterns of trade and sourcing with due regard for the data on both sides of the issue and under an evidentiary standard like that in the *India/Oman* inquiry that will inform the differentiation between ordinary commercial behavior and circumvention.

### C. Affiliation

In its PDM, Commerce addressed affiliation as follows (at 16, footnotes omitted):

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

Al Jazeera does not have direct contact with any Chinese HRS producers. Further, there are no facts that suggest control of Al Jazeera by Chinese producers of HRS with regard to CWP production in Oman. Additionally, we found no evidence to indicate that the Chinese CWP or Chinese HRS producers had arrangements with Al Jazeera which would allow them to export HRS to Oman for processing into CWP for export to the United States and avoid the discipline of the Orders. Further, Al Jazeera's purchases of HRS were not made directly from Chinese HRS producers but through unaffiliated traders/resellers.

In its FDM, Commerce found (at 20):

We continue to find that affiliation is not dispositive with respect to Commerce's determination and that the totality of the factors in this inquiry warrant an affirmative finding of circumvention of the Orders.

In the *India/Oman* PDM (at 23), Commerce went further (footnotes omitted, emphases added):

{Respondents} are not affiliated with any Indian producers of pipe and tube or Indian producers of HRS. There is neither common ownership, direct or indirect, nor a joint venture between the Oman and UAE respondents and Indian pipe and tube producers or Indian HRS producers. Further, there *are no facts (e.g., close supplier relationships) that suggest control* of any of the respondents by the Indian suppliers. In sum, *we have found no evidence to indicate that the Indian pipe and tube or HRS producers have attempted either to purchase or construct pipe mills in Oman or the UAE which would allow them to export HRS to Oman and the UAE for processing into pipe and tube for export to the United States to circumvent the Order*.

Thus, in the *India/Oman* inquiry, Commerce examined whether the Indian CWP or HRS producers had any close supplier relationships with the CWP producers in Oman and the UAE that suggested that the Indian producers might exercise "control" over the Oman and UAE pipe makers. In the present case, there is similarly no evidence of control. Also, in the *India/Oman* inquiry, Commerce considered whether the Indian HRS or CWP producers evidenced any *intent*

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [     ]*

to construct or acquire pipe-makers in Oman or UAE in order to funnel Indian HRS into the United States.  In the present case, there is no evidence of any such intent.

Al Jazeera asks the Court to instruct Commerce, upon remand, to undertake a fulsome analysis of affiliation and to articulate the weight it gives to this criterion in making its overall assessment of circumvention.

### D.  Whether Shipments Of HRS From China To Oman Increased

#### 1.  The Proceedings Below

Commerce's analysis relies on Al Jazeera's purchase history of HRS from China and third countries, PAM at 5, shown in Table 3, *supra*, and reproduced here:

| TABLE 3. HRS SOURCING DATA (JAZEERA HRS PURCHASE DATA, MT) | | | | |
|---|---|---|---|---|
| Year | From China | From 3rd Countries | Total Purchases | China Share (%) |
| 2019 | [     ] | [     ] | [     ] | [     ] |
| 2020 | [     ] | [     ] | [     ] | [     ] |
| 2021 | [     ] | [     ] | [     ] | [     ] |
| 2022 | [     ] | [     ] | [     ] | [     ] |
| 2023 | [     ] | [     ] | [     ] | [     ] |
| Oman SUBTOTAL | [     ] | [     ] | [     ] | [     ] |
| 2024:01-09 | | | | [     ] |

Commerce's narrative, quoted *supra*, PAM at 5, simply recapitulates the figures in Table 3, concluding (*id.*, footnote omitted):

> {S}hipments of Chinese HRS to Al Jazeera [     ] towards the end of the period of inquiry. … Additionally, Al Jazeera continues to purchase an [     ], from January to September 2024 [     ]% of Al Jazeera's purchases of HRS came from China.  We preliminarily find that this supports a finding of circumvention.

In its case brief, Al Jazeera argued (at 34, footnotes omitted) that –

> the increase in Al Jazeera's purchases of Chinese coils in 2023 is by no means the first time Al Jazeera has purchased a significant

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

share of its coil from China. In fact, in 2014, nearly 70% of Al Jazeera's coil purchases were from China.

Al Jazeera supported this argument with  Fig. 5, *supra*, which we provide again:

[



















]

Al Jazeera also explained that Indian HRS producers did not have available HRS to quote for Al Jazeera's purchase from the beginning of 2023, as supported by the minutes of Al Jazeera's Purchasing Committee. Case brief at 35.  Coupled with the unavailability of Russian HRS because of sanctions and the risks of buying Indian HRS while the *India/Oman* inquiry was pending, "Al Jazeera had little choice but to turn back to HRS from China (as it had done in 2014-15), although by 2024 the volume from India had begun to revive." *Id*. In conclusion, Al Jazeera argued (at 36, emphasis in original):

> Al Jazeera's purchases of HRS from China do not show a "clear changing pattern of trade" nor a "substantial and consistent shift" in purchasing patterns, as required by the *India/Oman Circumvention* PDM.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

Al Jazeera further explained that China's exports of HRS to Oman had never – since 2008, when the *China* orders came into effect – amounted to even one percent of China's total exports (case brief at 39, IQR Exh. 36, C.R. 25, P.R. 51):

| Table 11 CHINA EXPORTS OF HRS TO OMAN AND REST OF WORLD ("ROW") (%) | | | | |
|---|---|---|---|---|
| **Sum of Qty MT** | **YEAR GROUP** | | | |
| **Partner Group** | **2008** | **2009-2013** | **2014-2018** | **2019-2023** |
| Oman | 0.27% | 0.27% | 0.10% | 0.81% |
| ROW | 99.73% | 99.73% | 99.90% | 99.19% |
| **Grand Total** | **100.00%** | **100.00%** | **100.00%** | **100.00%** |

Source: comtrade data.xlsx
IQR Exh. 36.

Thus, Al Jazeera argued (*id*. at 40):

> The present inquiry can result in an affirmative determination only if the increase in Chinese exports of HRS to Oman in 2022-2023 was the result of "supply-push," *i.e.,* the Chinese steel sector pushing its steel into Oman to circumvent the AD order on CWP from China. In fact, the opposite was occurring: The increase in Chinese HRS volume into Oman in 2022-2023 was the result of "demand-pull" from the Oman side, because of the lack of availability of HRS from other international suppliers, particularly India, in this period.

Al Jazeera concluded (*id*. at 41):

> To the extent that two years' experience may constitute a "pattern of trade" – Chinese HRS exports to Oman essentially constant as a share of total Chinese HRS exports in 2022 and 2023 – the minuscule share of HRS exports to Oman in 2022/23 controverts the position that the Chinese steel-makers are increasingly routing HRS through Oman to make up for lost tonnage on pipe exports to the United States. Moreover, the considerable increase in volume in 2023 appears to be a function of China's tremendous global volume increase in 2023 (from 14 million MT in 2022 to 26 million MT in 2023), since Oman's share actually fell in 2023. In fact, China's exports of HRS to Oman have fluctuated considerably across the POI/Comparison Period, with no clear trend.

Commerce addressed Al Jazeera's arguments in its FDM at 23 (footnotes omitted):

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

> {Al Jazeera} claims that imports of HRS to Oman were driven by "demand-pull from the Oman side" rather than "supply-push" from China, a factor of intent not included in the Act. … Al Jazeera {also} claims that the relative volume of exports of HRS from China to Oman compared to China's exports of HRS to the rest of the world does not support an affirmative finding.

Commerce further explained (*id*. at 24, footnotes omitted):

> Al Jazeera's claim that the increase in imports is driven by a "demand-pull" and not a "supply-push" is immaterial under the statute. There is no intent element or motivation element for circumvention under section 781 ….

Commerce went on (*id*.):

> Al Jazeera's claim that the exports of HRS to Oman are relatively small compared to the total exports of HRS from China inappropriately conflates the requirement for Commerce to examine whether imports have increased with the volume of these imports compared with the total volume of all subject merchandise exports from China.

### 2.  Argument

Ultimately, Commerce rejected Al Jazeera's argument and found an increase in imports of Chinese HRS into Oman because China accounted for about 22% of Al Jazeera's HRS purchases in 2021 and 2022 and about 67% in 2023 (rounded figures from Table 3, above).

Commerce's conclusion is controverted by a comparison of Al Jazeera's POI HRS purchases from China and its comparison-period purchases, provided in AJSP IQR Exh.  11 (C.R. 49):

[

| Sum of QTY (MT) | ORIGIN GROUP | | | China Share | 5-year Periods |
|---|---|---|---|---|---|
| YEAR | China | Other | Grand Total | | |
| 2014 | | | | | |
| 2015 | | | | | |
| 2016 | | | | | % |
| 2017 | | | | | |
| 2018 | | | | | |
| 2019 | | | | | |
| 2020 | | | | | |
| 2021 | | | | | % |
| 2022 | | | | | |
| 2023 | | | | | |

**Table 12**
**AJSP COIL PURCHASES GROUPED BY CHINA AND OTHER**

Source: AJSP Coil purchases 2014-2024.xlsx, IQR Exh. 11

]

Thus, Al Jazeera's purchases of Chinese HRS were a substantially *smaller* share of its total HRS purchases in the POI than in the comparison period.  Commerce does not explain why it would eschew its POI-to-comparison-period bloc analysis for this indicator, while using it for others. Commerce thus avoided its responsibility to consider evidence inconsistent with its determination, while failing to consider the evidence in the "systematic" manner required by the *India/Oman* inquiry. To ensure a systematic analysis, Commerce must either rely on five-year blocs consistently or not at all; it cannot pick and choose the manner in which it presents the data.

Furthermore, Commerce failed to consider that all of Al Jazeera's purchases were from a dozen different trading companies, which, in turn, bought from 13 different producers, as discussed in the Sourcing section of this brief.  Thus, there is no basis to find that Chinese HRS makers were circumventing the order by funneling HRS to Oman for pipe-making.

The fact that Al Jazeera's purchases of Chinese HRS were driven by Al Jazeera's demand needs, as shown by the minutes of Al Jazeera's Purchasing Committee, *supra*, rather than by China's "supply push" is also directly relevant to the circumvention inquiry, in spite of Commerce's claim to the contrary.  The circumvention inquiry asks whether Chinese parties

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

were trying to evade the China *Orders* by funneling HRS through Oman; the focus is on the actions of the Chinese parties, who would benefit from circumvention. Thus, the fact that the Chinese HRS was brought into Oman by demand pull, rather than supply push, bears directly on whether Chinese parties were circumventing the *Orders*.

Commerce's assessment of the increase in shipments of Chinese HRS to Oman is also inconsistent with Commerce's approach in the *India/Oman* case. In *India/Oman*, DIPs argued that the disparity in antidumping rates on Indian CWP led Indian HRS producers to funnel HRS into Oman and the UAE, which had lower deposit rates. *India/Oman* PDM at 23. In considering whether Indian HRS exports to Oman and UAE had increased, Commerce noted the absence of any link between Indian deposit rates and Indian HRS exports to the respondent countries, stating (*id.*, footnotes omitted; emphasis added):

> {T}here is little connection between higher Indian cash deposit rates and a changing pattern of trade that would support a circumvention determination.… The record does not indicate a ***clear connection*** between the increase in shipments of Indian HRS to Oman and the UAE and circumvention of the Indian Order because global Indian HRS exports increased substantially during the same period, …

In the present case, Commerce has not articulated any link between Chinese AD margins and a changing pattern of trade or sourcing that would support an affirmative determination. In fact, in the present case, Commerce eschews linkage analysis and bases its conclusion entirely on a single slice of the available data, namely, the POI increase taken in isolation from the comparison period. Had Commerce compared the POI data with the comparison period, as it did for other indicia, it would have found that imports of Chinese HRS into Oman declined during the POI relative to the comparison period.

Finally, Commerce's conclusion is inconsistent with the *India/Oman IDM*, where Commerce found (at 27):

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

> We continue to find that the data provided by the domestic interested parties indicate that the share of total exports of Indian HRS to Oman and the UAE remain essentially unchanged (*i.e.,* less than one percent) for the comparison periods and does not support the claim that pipe and tube producers in Oman and the UAE increased their imports of Indian HRS in order to take advantage of cash deposit disparities between the *Order* and the *Omani and UAE Order*.

In the instant case, Commerce fails to explain how a market share of less than one percent of China's total HRS exports was inconsistent with circumvention in the *India/Oman* inquiry but consistent with circumvention in the *China/Oman* inquiry. Commerce thus failed to treat similar situations similarly, and its decision is therefore arbitrary in this regard. *Foshan Shunde,* 896 F. Supp. 2d at 1325.

Al Jazeera therefore asks the Court to remand with an instruction that Commerce reconsider its analysis of the increase in imports of Chinese HRS into Oman within the POI and between the POI and the comparison period, under the same evidentiary standard as had been the agency's practice heretofore, so as to differentiate between ordinary commercial behavior and circumvention.

## IV.  Commerce Failed To Consider Whether Action Was Appropriate To Prevent Evasion Of The China Orders

The statute requires Commerce to make a separate assessment, supported by substantial evidence, of whether "action is appropriate under this paragraph to prevent evasion of such order," per § 781(b)(1)(E).  *See*, *Seah Steel Vina Corp. v. United States*, 815 F. Supp. 3d 1369, 1382 (Ct. Int'l Trade 2025), stating (emphasis added):

> Subsection (b)(1)(E) requires Commerce to "determine that action is appropriate . . . to prevent evasion." The statute uses "and" to conjoin subsection (b)(1)(E) with the factors enumerated in subsection (b)(1)(A)-(D), thereby signaling that it is a *coequal factor that must be independently satisfied* for an affirmative circumvention finding.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

Here, Commerce's discussion of the "prevention of evasion" provision is perfunctory at best. The only reference to this provision is in the FDM at 6:

> This determination to prevent evasion is found in conjunction with the other four factors in sections 781(b)(1)(A)-(D) of the Act. Moreover, pursuant to section 781(b)(1)(E) of the Act, based on the information above, it is reasonable for Commerce to conclude that the wide disparity between the rates for the two countries could provide an incentive to circumvent the Chinese AD/CVD Orders and that the rate from the Oman AD order may not be sufficient to prevent evasion of the Chinese AD/CVD Orders through Oman. Therefore, an affirmative determination of circumvention is necessary to prevent evasion of the Chinese AD/CVD Orders through Oman.

Thus, Commerce's purported analysis is merely a restatement of the 781(b)(3) factors. Moreover, Commerce's conclusion is based on supposition and conjecture, which are not lawful bases for a determination. *See, China National Arts and Crafts Import and Export Corp., Tianjin Branch v. United States,* 771 F. Supp. 407, 421-22 (Ct. Int'l Trade 1991); *Asociacion Colombiana de Exportadores de Flores v. United States*, 704 F. Supp. 1114, 1117 (1989), aff'd, 901 F.2d 1089 (Fed. Cir. 1990) ("Speculation is not support for a finding…."). Commerce says that the disparity in AD rates *could provide* an incentive to circumvent and that *therefore* an affirmative determination is *necessary* to prevent evasion. Such a speculative premise does not support such a categorical conclusion. In any event, Commerce cites nothing beyond the 781(b)(3) factors to support its conclusion, ignoring the need for a distinct judgment.

In another section of the FDM, Commerce again alludes to prevention of evasion, but in terms even more conclusory than were quoted above (FDM at 19-20, footnote omitted):

> First, Commerce determined that the criteria under sections 781(b)(1)(A)-(D) of the Act were satisfied. Then, we examined the final factor under section 781(b)(1)(E) of the Act, which considers whether "action is appropriate under this paragraph to prevent evasion of {an order}." Pursuant to section 781(b)(1)(E) of the Act, we examined the factors under section 781(b)(3) of the Act, {quoting the statute}…. Thus, in determining whether to include

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

> CWP completed in Oman using Chinese HRS in the *Orders*, we
> followed the directive of the statute to consider factors under
> 718(b)(3) of the Act.

Again, Commerce simply reiterates the 781(b)(3) factors rather than conducting the separate analysis required by *Seah Steel*, 815 F. Supp. 3d at 1385. Here, Commerce made only the conclusory statement that "we examined … whether 'action is appropriate … to prevent evasion….'" Commerce thus fails to provide a "logically reasoned and well-researched approach" as required by *Save Domestic Oil,* 357 F.3d at 1289. Commerce's decision is therefore arbitrary and capricious; *see*, *U.K. Carbon & Graphite,* 931 F. Supp. 2d at 1328.

Al Jazeera therefore submits that a remand is warranted for Commerce to reconsider its finding that an affirmative determination is necessary to prevent evasion of the orders.

## CONCLUSIONS

Regarding the impermissibility of overlapping Orders, Commerce ignores the statutory scheme by imposing the *China CWP* AD order on CWP that is already subject to the *Oman Order*. By allowing overlapping orders on the same product from the same country, Commerce creates the likelihood of chaos in the international trade legal system, as respondents will be unable to properly distinguish subject from nonsubject merchandise in a given case. This chaos is without regard to the possibility of Al Jazeera's walling off high-priced HM sales from review by producing them from Chinese HRS, which would represent a tremendous opportunity in future reviews. Al Jazeera submits that the law is not so elastic as to allow for overlapping orders on a single product from a single country.

On patterns of trade, Commerce's entire conclusion rests on a single table (Table 1, *supra*) showing a 22% increase in imports of CWP from Oman concomitantly with a 70% decrease in CWP imports from China during the five-year blocs under consideration. Not only

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

does this framing of the criterion omit any substantive analysis, but it is directly contradicted by the fact that Al Jazeera's U.S. sales of CWP [    ] from 2019 to 2023, while the company's sales to other destinations [    ] in the same time frame (Table 2, *supra*).  Commerce simply ignored this fact in its analysis.

In regard to sourcing, Commerce relied on Al Jazeera's 2019-2023 HRS purchase data to determine that Al Jazeera's purchases of Chinese HRS represented [    ]% of Al Jazeera's HRS purchases in the POI, PAM at 4 – a finding that Commerce claims "supports a finding of circumvention." *Id*.  However, Commerce failed to consider that Al Jazeera's HRS purchases from China, as a share of the company's total HRS purchases, actually declined between the comparison period and the POI, from [    ]% of the total to [    ]% of the total; *see*, Table 8, *supra*. Furthermore, while Commerce cited Al Jazeera's continued purchases of Chinese HRS in 2024:Q1-Q3 as support for its determination as to sourcing (PAM at 4), the agency's refusal to consider the SIMA statistics proffered by Al Jazeera for exactly the same period was arbitrary and capricious.

Moreover, Commerce's decision to disregard the established practice articulated in the *India/Oman* case is meritless. Having acknowledged a longstanding practice of requiring a "clear changing pattern of trade" showing "clear or definitive changes" in the *India/Oman* PDM at 22, Commerce cannot disregard that standard without showing a good reason for doing so. *United States Steel, supra,* 348 F. Supp. 3d at 1260.  Where "Commerce adopts a practice that substantially deviates from precedent, it must at least acknowledge the change and show that there are good reasons for the new policy." *ArcelorMittal Stainless Belg. N.V. v. United States*, Slip Op. 2011-82, 2011 Ct. Intl. Trade LEXIS 82, *33 (2011) (*citing Pakfood Pub. Co. Ltd. v.*

*26-1061 AJSP Rule 56.2 Motion PUB.docx*

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

*United States*, 753 F. Supp. 2d 1334, 1341-2 (Ct. Int'l Trade 2011)), *reversed on other grounds*, *ArcelorMittal Stainless Belg. N.V. v. United States*, 694 F.3d 82 (CAFC 2012).

Finally, Commerce has paid no more than minimal lip service to § 781(b)(1)(E). Commerce must explain why action is appropriate to prevent evasion of the orders when the only evidence supporting Commerce's § 781(b)(3) analysis was a modest increase in CWP shipments from Oman at the same time as a decrease in shipments from China – particularly when belied by more detailed analysis – and a short-term reliance on Chinese HRS when lack of available Indian supply and the pendency of the *India/Oman* inquiry compelled Al Jazeera to reduce its reliance on Indian HRS.

Ultimately, the lack of substance in the data on which Commerce relied, coupled with the strong evidence against circumvention in the data that Commerce ignored or declined to consider, shows that Commerce has not adequately differentiated between ordinary commercial behavior and circumvention.  In the past, this differentiation was ensured by the application of an evidentiary standard that the pattern of trade be considered evidence of circumvention only if that pattern was clear, coherent, and convincing, and only if the analysis was made in a holistic, systematic way.  Al Jazeera submits that application of a clear evidentiary standard is the only means to differentiate between (a) ordinary commercial activity that may exhibit short-term spikes in buying decisions and (b) activity by Chinese steel producers to funnel HRS into Oman for production of pipes sent to the U.S. market in circumvention of the Orders on CWP from China.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [    ]*

Accordingly, Al Jazeera requests a remand for a comprehensive reexamination of the data under the evidentiary standard required by Commerce's precedents and in accordance with § 781(b)(1)(E).

Respectfully submitted,

/s/ *David L. Simon*

David L. Simon

LAW OFFICES OF DAVID L. SIMON, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, D.C. 20036
Tel. +1 (202) 236-2417
Email: dlsimon@dlsimon.com

*Counsel to Al Jazeera Steel Products Co. SAOG*

July 25, 2026

*26-1061 AJSP Rule 56.2 Motion PUB.docx*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the guidelines set forth in the Standard Chambers Procedures. The confidential version of this brief contains 13,765 words on numbered pages (that is, excluding only the Cover Page, the Caption, the Table of Contents, the Table of Authorities, the Signature Block, and this Certificate).

/s/ *David L. Simon*
David L. Simon

Date:  July 25, 2026                                   *Counsel to Al Jazeera*

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| AL JAZEERA STEEL PRODUCTS CO. SAOG,<br><br>　　　　PLAINTIFF,<br><br>　　v.<br><br>UNITED STATES,<br><br>　　　　DEFENDANT,<br><br>　and<br><br>BULL MOOSE TUBE COMPANY, MARUICHI AMERICAN CORPORATION, WHEATLAND TUBE COMPANY, AND THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL CIO, CLC,<br><br>　　　DEFENDANT-INTERVENORS. | **Before: Mark A. Barnett,<br>Chief Judge<br>Court No. 26-01061** |

## <u>ORDER</u>

Upon consideration of the Rule 56.2 Motion Of Plaintiff Al Jazeera Steel Products Co. SAOG For Judgment On The Agency Record, and all other papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that Al Jazeera's motion is granted, and it is further

**ORDERED** that this case is remanded to Commerce for reconsideration in light of this Court's finding that a given product from a given country may not be subject to multiple, overlapping antidumping orders; and it is further

**ORDERED** that this case is remanded to Commerce for reconsideration of the statutory "Factors to Consider" per § 781(b)(3) and of whether "action is appropriate… to prevent evasion of such order," per § 781(b)(1)(E); and it is further

1

**ORDERED** that Commerce shall file its final results of redetermination on remand within 90 days of the date of this order.

**SO ORDERED**.


Dated: _____        _____
            New York, NY                                        JUDGE

2