**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

AL JAZEERA STEEL PRODUCTS CO. SAOG,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

BULL MOOSE TUBE COMPANY, MARUICHI AMERICAN CORPORATION, WHEATLAND TUBE COMPANY, and THE UNITED STEEL, PAPER AND FORESTRY, RUBBER MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL CIO, CLC,

Defendant-Intervenors.

Court No. 26-01061

PUBLIC VERSION

# DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

JONATHAN D. GUYNN
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

TARA K. HOGAN
Assistant Director

KHASHAYAR ATTARAN
Trial Attorney
United States Department of Justice
Civil Division, Commercial Litigation Branch
Ben Franklin Station
Washington, D.C. 20044
(202) 257-8465
Khashayar.attaran@usdoj.gov
*Attorneys for Defendant*

OF COUNSEL:
JOSHUA ANGELO
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
(202) 875-4092
Joshua.Angelo@trade.gov

November 12, 2026

# TABLE OF CONTENTS


STATEMENT PURSUANT TO RULE 56.2 .......... 2

I. Administrative Determination Under Review` .......... 2

STATEMENT OF FACTS .......... 3

I. Legal Framework For Circumvention Inquiries Under 19 U.S.C. § 1677j(b) .......... 3

II. Initiation Of Circumvention Inquiries .......... 6

III. Preliminary Determinations .......... 8

IV. Final Determinations .......... 11

V. Establishment of Certification Procedure .......... 16

SUMMARY OF THE ARGUMENT .......... 16

ARGUMENT .......... 19

I. Standard of Review .......... 19

II. Commerce's Final Determination Does Not Subject A Single Product To Multiple AD Orders, But Rather Lawfully Assigns Circumventing And Non-Circumventing Merchandise To Separate Orders .......... 20

III. Substantial Evidence Supports Commerce's Findings Regarding The "(b)(3) Factors," and Commerce's Analysis Was Otherwise in Accordance with Law .......... 25

A. The Weighing Of The (b)(3) Factors Are Left To Commerce's Discretion .......... 25

B. Commerce Lawfully Weighed The (b)(3) Factors, Finding That The Totality Of Circumstances Of The Statutory Factors As A Whole Weighed In Favor Of An Affirmative Circumvention Determination .......... 27

(1) Patterns of Trade and Sourcing .......... 27

(2) Affiliation .......... 36

(3) Increased Imports .......... 37

IV. Commerce's Determination That an Affirmative Determination Was Appropriate to Prevent Evasion of the China Orders Is Supported by Substantial Evidence and In Accordance With Law .......... 40

CONCLUSION ........................................................................................................43

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Al Ghurair Iron & Steel LLC v. United States*,
536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) .................................................. *passim*

*Al Ghurair Iron & Steel LLC v. United States*,
65 F.4th 1351 (Fed. Cir. 2023) ........................................................................ 20, 26

*AL Tech Specialty Steel Corp. v. United States*,
366 F. Supp. 2d 1236 (Ct. Int'l Trade 2005) .......................................................... 23

*Apex Frozen Foods Private Ltd. v. United States*,
862 F.3d 1322 (Fed. Cir. 2017)................................................................................ 23

*Bates v. United States*,
522 U.S. 23 (1997)................................................................................................... 26

*Boomerang Tube LLC v. United States*,
856 F.3d 908 (Fed. Cir. 2017).................................................................................. 23

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984)................................................................................................. 34

*Consolidated Edison Co. v. NLRB*,
305 U.S. 197 (1938)................................................................................................. 19

*Consolo v. Fed. Mar. Comm'n*,
383 U.S. 607 (1966)................................................................................................. 19

*Corus Staal BV v. United States*,
502 F.3d 1370 (Fed. Cir. 2007)................................................................................ 23

*Deacero S.A.P.I. de C.V. v. United States*,
838 F. Supp. 3d 1351 (Ct. Int'l Trade 2026) .................................................. *passim*

*Fujian Yinfeng Imp & Exp Trading Co., Ltd. v. United States*,
607 F. Supp. 3d 1301 (Ct. Int'l Trade 2022) .......................................................... 40

*Fujitsu Gen. Ltd. v. United States*,
88 F.3d 1034 (Fed. Cir. 1996).............................................................................. 19, 20

*Goldilink Indus. Co. v. United States*,
431 F.Supp.2d 1323 (Ct. Int'l Trade 2006) ........ 20

*Goodluck India Ltd. v. United States*,
670 F. Supp. 3d 1353 (Ct. Int'l Trade 2023) ........ 40

*Hyundai Elec. & Energy Sys. Co. v. United States*,
15 F.4th 1078 (Fed. Cir. 2021) ........ 20

*Itochu Bldg. Prods. v. United States*,
733 F.3d 1140 (Fed. Cir. 2013)........ 23, 40, 41

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)........ 34

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........ 24

*Meridian Prods., LLC v. United States*,
851 F.3d 1375 (Fed. Cir. 2017)........ 19

*Mid Continent Nail Corp. v. United States*,
949 F. Supp. 2d 1247 (Ct. Int'l Trade 2013) ........ 5, 22

*Mitsubishi Elec. Corp. v. United States*,
700 F. Supp. 538 (Ct. Int'l Trade 1988), *aff'd*, 898 F.2d 1577 (Fed.Cir.1990) ........ 6

*Nippon Steel Corp. v. United States*,
458 F.3d 1345 (Fed. Cir. 2006)........ 19

*Royal Thai Gov't v. United States*,
978 F. Supp. 2d 1330 ........ 24

*Russello v. United States*,
464 U.S. 16 (1983)........ 26

*SeAH Steel Corp. v. United States*,
815 F. Supp. 3d 1369 (Ct. Int'l Trade 2025) ........ 41, 42

*Stanley Works (Langfang) Fastening Sys., Ltd. v. United States*,
279 F. Supp. 3d 1172 (Ct. Int'l Trade 2017) ........ 23

*Usinor v. United States*,
342 F.Supp.2d 1267 (Ct. Int'l Trade 2004) ........ 20

*West Virginia v. Environmental Protection Agency*,
597 U.S. 697 (2022) ........ 21

*Wheatland Tube Co. v. United States*,
161 F.3d 1365 (Fed. Cir. 1998) ........ 42

*Wind Tower Trade Coal. v. United States*,
810 F. Supp. 3d 1351 (Ct. Int'l Trade 2025) ........ 32

**Statutes**

19 U.S.C. § 1516a(b)(1)(B) ........ 19

19 U.S.C. § 1677j(b) ........ *passim*

19 U.S.C. § 3512(d) ........ 5

19 U.S.C. § 1671 ........ 3

19 U.S.C. § 1673 ........ 3

28 U.S.C. § 2637(d) ........ 23

**Rules**

RCFC 56.2 ........ 1, 2

**Regulations**

19 C.F.R. § 351.225(h) ........ 4

19 C.F.R. § 351.228 ........ 16

**Administrative Determinations**

*Certain Cold-Rolled Steel Flat Products From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty* Orders,
83 Fed. Reg. 23,891 (May 23, 2018) ........ 39

*Certain Corrosion-Resistant Steel Products From Taiwan: Affirmative Preliminary Determination of Circumvention Inquiry on the Antidumping D*uty Order,
84 Fed. Reg. 32,864 (July 10, 2019)........................................................................ 32

*Certain Corrosion-Resistant Steel Products From Taiwan: Affirmative Preliminary Determination of Circumvention Inquiry on the Antidumping D*uty Order,
84 Fed. Reg. 70,937 (Dep't of Commerce Dec. 26, 2019)..................................................... 32

*Certain Corrosion-Resistant Steel Products from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Du*ty Orders,
83 Fed. Reg. 23,895 (Dep't of Commerce May 23, 2018)...................................................... 36

*Certain Welded Carbon Steel Standard Pipes and Tubes From India: Final Negative Determinations of Circumvention of the Antidumping D*uty Order,
88 Fed. Reg. 12,917 (Dep't of Commerce Mar. 1, 2023)........................................................ 31

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*,
73 Fed. Reg. 42,547 (July 22, 2008)........................................................................... 6

*Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Du*ty Orders,
91 Fed. Reg. 4,871 (Feb. 3, 2026) ........................................................................*passim*

*Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping and Countervailing Du*ty Orders,
89 Fed. Reg. 91,327 (Nov. 19, 2024)........................................................................... 7

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order*,
73 Fed. Reg. 42,545 (July 22, 2008)........................................................................... 6

*Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Du*ty Orders,
90 Fed. Reg. 34,427 (July 22, 2025)........................................................................... 8

*Circular Welded Carbon-Quality Steel Pipe From the Sultanate of Oman, Pakistan, and the United Arab Emirates: Amended Final Affirmative Antidumping Duty Determination and Antidumping Du*ty Orders,
81 Fed. Reg. 91,906 (Dec. 19, 2016) .......................................................................... 6

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping Duty and*

*Countervailing Duty Orders*,
87 Fed. Reg. 1907 (Apr. 1, 2022) .......... 22

*Final Affirmative Determination of Circumvention of the Antidumping Duty Order*,
89 Fed. Reg. 79,252 (Dep't of Commerce Sept. 27, 2024), *as amended at* 89 Fed. Reg. 85944 (Oct. 29, 2024) .......... 34

*Oil Country Tubular Goods From the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Du*ty Orders,
90 Fed. Reg. 40336 (Aug. 19, 2025) .......... 29

*Oil Country Tubular Goods From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Du*ty Orders,
91 Fed. Reg. 9811 (Feb. 27, 2026) .......... 29, 30

*Prestressed Concrete Steel Wire Strand From Mexico: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*,
89 Fed. Reg. 79,252 (Sept. 27, 2024) .......... 39

*Steel Wire Garment Hangers From the People's Republic of China and the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order on Steel Wire Garment Hangers From the People's Republic of China and the Antidumping and Countervailing Duty Orders on Steel Wire Garment Hangers From the Socialist Republic of Vietnam*,
91 Fed. Reg. 60,086 (Sept. 22, 2026) .......... 41

*Welded Carbon Steel Standard Pipes and Tubes from India: Preliminary Negative Determinations of Circumvention of the Antidump*ing Order,
87 Fed. Reg. 52,507 (August 26, 2022) .......... 29

**Other Authorities**

Omnibus Trade Act of 1987, Report of the Senate Finance Committee,
S. Rep. No. 100-71, at 101 (1987) .......... 5, 6, 22

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act,
H.R. Doc. No. 103-316 (SAA), (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 .......... 5, 26

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| AL JAZEERA STEEL PRODUCTS CO. SAOG,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>BULL MOOSE TUBE COMPANY, MARUICHI AMERICAN CORPORATION, WHEATLAND TUBE COMPANY, and THE UNITED STEEL, PAPER AND FORESTRY, RUBBER MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL CIO, CLC,<br><br>Defendant-Intervenors. | Court No. 26-01061<br><br>**CONFIDENTIAL VERSION**<br>BPI on pp. 40 |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Defendant, the United States, respectfully submits this response in opposition to the motion for judgment upon the agency record filed by plaintiff, Al Jazeera Steel Products Co. SAOG (Al Jazeera), challenging the U.S. Department of Commerce's (Commerce) final affirmative determination of circumvention of the antidumping duty and countervailing duty orders covering circular welded carbon quality steel pipe from the People's Republic of China.

Plaintiff challenges three aspects of Commerce's determination: (1) its alleged treatment of entries as subject to multiple country orders; (2) its affirmative circumvention finding; and (3) its determination that such a finding was necessary to prevent evasion of the orders. As demonstrated below, Commerce's final affirmative determination is supported by substantial

evidence and in accordance with law. Accordingly, we respectfully request the Court sustain Commerce's final determination in full and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

### I. Administrative Determination Under Review

The administrative determination under review is Commerce's final affirmative determination of circumvention of the antidumping duty and countervailing duty orders covering circular welded carbon quality steel pipe (CWP) from the People's Republic of China. *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 Fed. Reg. 4,871 (Feb. 3, 2026) (Final Circumvention Determination) (AD P.R. 5) (CVD P.R. 4), and accompanying Issues and Decision Memorandum (IDM) (AD P.R. 6) (CVD P.R. 5).[1] The period of the inquiry is January 1, 2019, through December 31, 2023. For analysis of certain statutory criteria, Commerce used calendar year 2023 to examine a full year of such data.

**Issues Presented for Review**

1. Whether Commerce's determination lawfully establishes mutually exclusive treatment under the applicable orders, subjecting circumventing merchandise to the China orders while leaving non-circumventing merchandise subject only to the Oman order.

2. Whether Commerce's totality of circumstances analysis of the factors in 19 U.S.C. § 1677j(b)(3) warranted an affirmative finding of circumvention is supported by substantial evidence.

---

[1] We refer to the documents on the antidumping duty circumvention proceeding as "AD P.R." and "AD C.R." and the copies of the documents filed for administrative purposes on the CVD proceeding pursuant to 19 C.F.R. § 351.226(m)(2) as "CVD P.R." and (CVD P.R.).

3. Whether Commerce adequately explained why an affirmative circumvention determination was necessary to prevent evasion of the orders under 19 U.S.C. § 1677j(b)(1).

## STATEMENT OF FACTS

### I. Legal Framework For Circumvention Inquiries Under 19 U.S.C. § 1677j(b)

The Tariff Act of 1930, as amended (the Act), allows Commerce, if certain criteria are met through investigations by Commerce and the U.S. International Trade Commission (ITC), to impose antidumping and countervailing duties on goods determined to be sold in the U.S. market at less than fair value or subsidized by a foreign government and materially injuring a U.S. industry. *See* 19 U.S.C. §§ 1671, 1673 (governing countervailing and antidumping duties, respectively).

To prevent companies from avoiding or circumventing such countervailing or antidumping duty orders, among other things, Congress authorized Commerce, upon making certain findings, to include "{m}erchandise completed or assembled in other foreign countries" within the scope of the orders. 19 U.S.C. § 1677j(b). Among the different types of circumvention recognized by the statute, Commerce may find unlawful circumvention when merchandise, of the same class or kind as that subject to an antidumping or countervailing duty order, is completed or assembled in a foreign country other than the country to which the order applies. *Id.* § 1677j(b). Commerce's analysis is guided by three subsections.

Pursuant to subsection (b)(1), Commerce must determine that five enumerated statutory requirements are met to reach an affirmative determination. § 1677j(b)(1)(A)–(E):

> (A) {the} merchandise imported into the United States is of the same class or kind as any merchandise produced in a foreign country that is the subject of . . . {an AD/CVD order},
>
> (B) before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise which . . .

> is subject to the order . . ., or . . . produced in a foreign country . . . to which such order . . . applies,
>
> (C) the process of assembly or completion in the foreign country . . . is minor or insignificant,
>
> (D) the value of the merchandise produced in the foreign country . . . is a significant portion of the total value of the merchandise exported to the United States, and
>
> (E) action is appropriate . . . to prevent evasion of such order . . .

*Id.* § 1677j(b)(1); *see also* 19 C.F.R. § 351.225(h) (explaining that Commerce "may include within the scope of an antidumping or countervailing duty order, at any time such order is in effect, imported merchandise completed or assembled in a foreign country other than the country to which the order applies").

In determining whether the process of assembly or completion in the third country is "minor or insignificant" under 19 U.S.C. § 1677j(b)(1)(C), the statute directs Commerce to "take into account":

> (A) the level of investment in the foreign country,
>
> (B) the level of research and development in the foreign country,
>
> (C) the nature of the production process in the foreign country
>
> (D) the extent of the production facilities in the foreign country,
>
> (E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. § 1677j(b)(2). No single factor listed in section 781(b)(2) of the Act is controlling. 19 C.F.R. § 351.225(h); Statement of Administrative Action Accompanying the Uruguay Round

Agreements Act, H.R. Doc. No. 103-316 (SAA), at 893 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040[2].

Lastly, in determining whether "merchandise assembled or completed" in a third country should be included within the scope of an AD/CVD order, Commerce under subsection (b)(3) ("the (b)(3) factors") "shall take into account such factors as—":

> (A) the pattern of trade, including sourcing patterns,
>
> (B) whether the manufacturer or exporter of the merchandise ... is affiliated with the person who uses the merchandise ... to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and
>
> (C) whether imports into the foreign country of the merchandise ... have increased after the initiation of the {AD/CVD} investigation.

§ 1677j(b)(3).

The legislative history of these circumvention provisions indicates that their purpose is to "authorize the Commerce Department to apply antidumping and countervailing duty orders in such a way as to prevent circumvention and diversion of U.S. law." Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-71, at 101 (1987) (Omnibus Trade Act Senate Report). Congress has expressed its intention that the circumvention statute "grant the Commerce Department substantial discretion in interpreting these terms, and invoking these measures, so as to allow it flexibility to apply the provisions in an appropriate matter" and that Commerce use its authority "to the fullest extent possible to combat diversion and circumvention of the antidumping and countervailing duty laws." *Id.* at 100; *see also Mid Continent Nail Corp. v. United States*, 949 F. Supp. 2d 1247, 1283 (Ct. Int'l Trade 2013) (*Mid Continent*) (stating that "Commerce has a *duty* to avoid the evasion of antidumping duties" and,

---

[2] The SAA is the authoritative interpretation of the statute. 19 U.S.C. § 3512(d).

"has a certain amount of discretion {to act} . . . with the purpose in mind of preventing the intentional evasion or circumvention of the antidumping duty law" (quoting *Mitsubishi Elec. Corp. v. United States*, 700 F. Supp. 538, 555 (Ct. Int'l Trade 1988), *aff'd*, 898 F.2d 1577 (Fed.Cir.1990)). "{A}ggressive implementation" of the circumvention laws "can foreclose these practices." Omnibus Trade Act at 100.

**II. Initiation Of Circumvention Inquiries**

Commerce issued antidumping (AD) and countervailing duty (CVD) orders covering CWP from China on July 22, 2008. *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 42,547 (July 22, 2008) (China AD Order); *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order*, 73 Fed. Reg. 42,545 (July 22, 2008) (China CVD Order) (collectively, China Orders). On December 19, 2016, Commerce issued an AD order covering CWP from Oman. *Circular Welded Carbon-Quality Steel Pipe From the Sultanate of Oman, Pakistan, and the United Arab Emirates: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Orders*, 81 Fed. Reg. 91,906 (Dec. 19, 2016) (Oman Order).

On July 9, 2024, Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (collectively, Petitioners) filed circumvention inquiry requests alleging that CWP completed in Oman using hot-rolled steel (HRS) manufactured in China was circumventing the China Orders. Petitioners' Letter, "Circular Welded Carbon Quality Steel Pipe from the People's Republic of

China—Request for Circumvention Inquiry" (Circumvention Allegation) (July 9, 2024) (AD P.R. 128-31; AD C.R. 79-82) (CVD P.R. 40-43; CVD C.R. 16-19).

After requesting and receiving additional information from the petitioners, Commerce initiated a country-wide circumvention inquiry of the China Orders. *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping and Countervailing Duty Orders*, 89 Fed. Reg. 91,327 (Nov. 19, 2024) (initiation notice) (AD P.R. 85) (CVD P.R. 15). The period of the inquiry is January 1, 2019, through December 31, 2023. For analysis of certain statutory criteria, Commerce used calendar year 2023 to examine a full year of such data.

Commerce selected Al Jazeera and Al Jazeera Tube Mill Company SAOG as mandatory respondents in the circumvention inquiry.[3] Memorandum, "Respondent Selection," dated January 13, 2025 (Respondent Selection Memorandum) (AD P.R. 78; AD C.R. 60). During the inquiry, Commerce issued questionnaires to Al Jazeera seeking information concerning, in relevant part, the sourcing of its HRS purchases, its production and exports of CWP, and its affiliates. Commerce's Letter, "Circumvention Inquiry Initial Questionnaire," dated February 4, 2025) (AD P.R. 77); Commerce's Letter, "Al Jazeera Steel Products Company SAOG Second Supplemental Questionnaire," dated May 23, 2025) (AD P.R. 33; AD C.R. 7). Al Jazeera submitted responses to Commerce's questionnaires, addressing its sourcing, production, and affiliation. Al Jazeera's Letter, "Al Jazeera Initial Questionnaire Response (IQR)," dated March 11, 2025 (Al Jazeera's IQR) (AD P.R. 47-65; AD C.R. 24-59); Al Jazeera's Letter, "Al Jazeera

[3] According to information in the IQR, Al Jazeera Tube Mill Company SAOG no longer existed during the inquiry and Al Jazeera was the appropriate mandatory respondent. *See* Al Jazeera's Letter, "Al Jazeera Initial Questionnaire Response (IQR)," dated March 11, 2025, at 1 and 14 (Al Jazeera's IQR) (AD P.R. 47-65; AD C.R. 24-59) a. Commerce based its determination on Al Jazeera's responses. PDM at 2.

second supplemental questionnaire response ("SQR2")," dated June 6, 2025) (Al Jazeera's Second SQR) (AD P.R. 30-32; AD C.R. 4-6).

### III. Preliminary Determinations

On July 22, 2025, Commerce published the preliminary determination of the circumvention inquiry. *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 90 Fed. Reg. 34,427 (July 22, 2025) (Preliminary Determination) (AD P.R. 27) (CVD P.R. 10), and accompanying Preliminary Decision Memorandum (PDM) (AD P.R. 28) (CVD P.R. 11). Commerce preliminarily determined that each statutory factor under 19 U.S.C. § 1677j(b) was met and preliminarily determined pursuant to 19 U.S.C. § 1677j(b)(3) that the patterns of trade examined weighed in favor of an affirmative circumvention determination, that Al Jazeera was not affiliated with any Chinese HRS producers, and that Chinese imports of HRS to Oman increased by 14,182.82 percent. PDM at 14-16.

Evaluating the first two of these criteria, 19 U.S.C. §§ 1677j(b)(1)(A)-(B), Commerce preliminarily found that the merchandise under inquiry, consisting of CWP exported from Oman to the United States, is of the same class or kind as the merchandise subject to the Orders, and that certain CWP produced in Oman and exported to the United States is assembled or completed using HRS manufactured in China. PDM at 4-5. Commerce based this determination on record evidence showing that Al Jazeera produced and exported to the United States, during the period of inquiry, CWP manufactured in Oman from HRS sourced from multiple countries, including China. Specifically, Al Jazeera reported purchasing Chinese-origin HRS for use in its CWP production. Record evidence further confirms that Al Jazeera produced and exported to the United States CWP meeting the physical description of the merchandise covered by the Orders

and entered under the same HTSUS subheadings identified in the scope. PDM at 7-9; See Al Jazeera's IQR at 6, 8, 11, 26; see also Al Jazeera's Second SQR at 1-2 and Exhibit 2.

Evaluating the third criterion, 19 U.S.C. § 1677j(b)(1)(C), Commerce preliminarily found that the processing of HRS from China undertaken by Al Jazeera to produce CWP in Oman adds relatively minor value. PDM at 9-10. Commerce explained that it based its analysis on "both qualitative and quantitative factors." *Id*. at 9.

Commerce analyzed the five sub-factors the statute directs it to "take into account." 19 U.S.C. §§ 1677j(b)(2)(A)-(E). With respect to these factors, Commerce preliminarily found in each inquiry that: (1) investment in CWP production in Oman is minimal compared to the substantial investment required to produce HRS in China, weighing in favor of a finding of minor or insignificant processing; (2) Al Jazeera incurred little or no research-and-development (R&D) expense for its CWP products, which Commerce found was not especially probative on determining whether the Order is being circumvented; (3) the production process undertaken by Al Jazeera to produce CWP is less complex and significant than manufacturing the HRS in China finding that the process in Oman mostly consists of slitting, forming, Elsing, testing, galvanizing, and finishing, while the production of HRS involves multiple high-intensity steps to turn raw materials into processed products; (4) the extent of production facilities and equipment in Oman is minimal when compared to the facilities required to produce HRS; (5) the processing performed in Oman added only a small proportion of the merchandise's overall value. PDM at 8-13.

Turning to the 19 U.S.C. § 1677j(b)(3) factors, Commerce evaluated in each inquiry the relevant patterns of trade and sourcing, affiliation, and whether imports of HRS from China to Oman increased. PDM at 14-16. Overall, Commerce preliminarily determined that "taking into

consideration {19 U.S.C. §1677j(b)(3)}, . . .action is appropriate to prevent evasion of the Order," though none of the factors themselves were dispositive. PDM at 17. Lastly, based on "a consideration of the factors" under section 781(b) of the Act, and the "totality of factors in this inquiry," Commerce preliminarily determined under 19 U.S.C. § 1677j(b)(1)(E) that action was appropriate to prevent evasion of the orders. PDM. at 17.

Commerce also published a preliminary analysis memorandum providing further details regarding business proprietary information. Memorandum, "Preliminary Analysis Memorandum for Al Jazeera Steel Products Co., SAOG," dated July 17, 2025 (Preliminary Analysis Memorandum) (AD P.R. 26; AD C.R. 3).

In its administrative case brief following the preliminary determination, Al Jazeera argued that: (1) Commerce unlawfully subjected CWP from Oman to multiple duty orders, (2) that Al Jazeera's pattern of trade precluded an affirmative circumvention determination, (3) that Al Jazeera's lack of affiliationwith any Chinese entity was inconsistent with an affirmative determination, and (4) that Commerce's analysis of whether Chinese shipments of HRS to Oman increased was inconsistent with the statute. Al Jazeera's Case Brief (Aug. 7, 2025) (AD P.R. 22; AD C.R. 1) (CVD P.R. 9, CVD C.R. 1) at 1-3. On August 15, 2025, Petitioners submitted a rebuttal brief. Petitioner's Case Brief (Aug. 15, 2025) (Petitioner's Rebuttal Brief (P.R. 18). Petitioners argued, in relevant part, that nothing prevents Commerce from determining that CWP from Oman circumvented the orders on CWP from China, that Commerce's pattern of trade analysis was lawful, that affiliation is not dispositive, and that Commerce's analysis of whether Chinese HRS imports into Oman increased was not deficient. *Id.* at 1-4.

## IV. Final Determinations

In its final determination, Commerce continued to find that U.S. imports of CWP from Oman using Chinese HRS were circumventing the China Orders on a country-wide basis. *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 Fed. Reg. 4,871 (Dep't Commerce Feb. 3, 2026).

Commerce addressed Petitioner's argument that Commerce unlawfully subjected CWP from Oman to multiple orders, explaining that an affirmative circumvention determination would not subject the same merchandise to multiple orders, because Chinese AD/CVD duties would apply only to CWP from Oman made with Chinese HRS, while the Oman AD order would apply to CWP made with non-Chinese HRS, leaving no overlap in coverage. IDM at 5-6. In addition, Commerce explained that nothing in the statute prohibits it from initiating a circumvention inquiry involving a country already subject to its own AD/CVD orders, noting that Al Jazeera identified no statutory language to the contrary. IDM at 6. Commerce likewise rejected Al Jazeera's reliance on prior circumvention determinations and scope exclusions, explaining that those authorities did not prohibit a circumvention inquiry involving merchandise already subject to an AD order and did not support the conclusion that CWP from Oman would be impermissibly covered by multiple orders especially where—as here—the affirmative circumvention determination would apply Chinese AD/CVD duties to CWP from Oman made with Chinese HRS, while the Oman AD order would continue to apply to CWP made with non-Chinese HRS.

Commerce likewise rejected Al Jazeera's reasoning that the domestic industry already receives adequate protection because CWP from Oman is already subject to an antidumping

order, finding persuasive statistic cited by the domestic interested parties that CWP from China is subject to AD and CVD rates from 98.82 percent to 702.38 percent while CWP from Oman is subject to an AD rate of 2.31 percent. IDM at 5-6. Commerce also rejected Al Jazeera's contention that a certification process requiring identification of HRS input origins would be unduly burdensome and impractical, finding that Al Jazeera already tracks the origin of its steel inputs for U.S. import reporting requirements and therefore possesses the information necessary to comply with such a process. IDM at 7

With respect to the (b)(3) factors, Commerce addressed Al Jazeera's argument that the pattern of trade precluded an affirmative circumvention determination. Commerce rejected this contention, explaining that patterns of trade weigh in favor of an affirmative circumvention determination. IDM at 13. Specifically, Commerce found that trade patterns supported an affirmative circumvention determination, noting that: U.S. imports of CWP from Oman increased 22.29% (from 197,172 MT to 241,124 MT), while U.S. imports of CWP from China decreased 70.03% (from 207,554 MT to 62,207 MT), and Chinese exports of HRS to Oman increased by more than 14,182.82% (from 2,444 MT to 349,072 MT) during the relevant period. IDM at 14; citing, "Preliminary Analysis Memorandum for Al Jazeera Steel Products Co., SAOG," dated July 17, 2025 (Preliminary Analysis Memorandum), at 4-5.

See table for illustration purposes below:

| Trade Flow | Comparison Period (MT) | Period of Inquiry (MT) | Percentage Change |
|---|---|---|---|
| U.S. Imports of CWP from Oman | 197,172 | 241,124 | +22.29% |
| U.S. Imports of CWP from China | 207,554 | 62,207 | −70.03% |
| Chinese Exports of HRS to Oman | 2,444 | 349,072 | +14,182.82% |

Commerce found that trade patterns supported an affirmative circumvention determination, citing a significant increase in U.S. imports of CWP from Oman, a sharp decline in imports from China, and a substantial increase in Chinese HRS exports to Oman during the period of inquiry. Commerce found these factors, as well as an analysis of Al Jazeera's quantity and value information, weigh in favor of an affirmative circumvention determination. PDM at 14. Commerce also considered Al Jazeera's argument that circumvention requires Oman to fully replace lost Chinese export volumes or otherwise exhibit a particular trade pattern. Commerce explained that neither the statute nor its practice requires a complete substitution of Chinese exports, and that Commerce has previously made affirmative circumvention determinations even where trade patterns were mixed or declining. IDM at 16. Likewise, Commerce rejected Al Jazeera's characterization of data showing only a "weak negative correlation between imports from Oman and China". *Id.* Agreeing with domestic interested parties, Commerce found that the correlation coefficient of −0.6383 reflected a strong negative correlation consistent with circumvention, particularly given the simultaneous decline in U.S. imports of CWP from China and the dramatic increase in Chinese HRS exports to Oman. IDM at 16; PDM at 4.

Commerce rejected Al Jazeera's argument that a circumvention finding requires a clear and substantial shift in trade patterns linked to the Chinese orders. Commerce explained that patterns of trade are only one of the factors that section 781(b)(3) directs Commerce to consider and are not a prerequisite to an affirmative circumvention determination. Citing to *Al Ghurair*, and the domestic interested parties' contentions, Commerce explainedthat there is no requirement to demonstrate a particular pattern of trade evidence as a precondition for an affirmative circumvention determination. IDM at 13-14.

In rejecting many of Al Jazeera's other arguments, Commerce emphasized that "there is no requirement to demonstrate a particular pattern of trade evidence as a precondition for an affirmative circumvention determination" and that "the complete replacement of lost export volumes of China's CWP by Oman is not necessary to find circumvention." IDM at 19. Commerce further explained that "{c}ircumvention undermines the effectiveness of the remedies provided by AD/CVD orders" and that "{w}hether the occurrences of circumvention are few or many, and whether the volumes are large or small, does not change whether a product is circumventing an order." IDM at 19. Accordingly, Commerce found that "the totality of evidence, including patterns of trade, indicates that the inquiry merchandise is circumventing the Orders." *Id.*

With respect to affiliation, Commerce also addressed Al Jazeera's argument that the absence of any affiliation with a Chinese producer, and its practice of purchasing HRS through independent traders rather than directly from Chinese mills, was inconsistent with a "clear changing pattern of trade required for an affirmative determination." IDM at 19-20. Commerce rejected Al Jazeera's reliance on the absence of affiliation with Chinese producers, explaining that affiliation is merely one factor under section 781(b)(3) and is not dispositive. IDM at 21. Commerce further noted that it has previously made affirmative circumvention determinations, including in the Vietnam CWP circumvention inquiry, despite finding no evidence of affiliation with Chinese producers, and that the record in this case, as in those case, "when considered as a whole, the factors weighed in favor of an affirmative finding." IDM at 21; PDM at 17.

With respect to whether Omani imports of Chinese HRS increased, Commerce addressed Petitioners argument that Commerce's analysis of whether Chinse shipments of HRS to Oman increased was inconsistent with the statute. IDM at 21-22. Specifically, Al Jazeera argued that

Commerce did not consider whether HRS imports into Oman increased in every year following the imposition of the orders on CWP from China and that there are other explanations for the additional supply that Commerce failed to consider. *Id.* Commerce addressed and rejected three of Al Jazeera's arguments concerning whether imports of Chinese HRS into Oman had increased: (1) that Commerce should have analyzed imports dating back to 2008, when the CWP orders were issued, rather than the selected inquiry period; (2) that any increase in Chinese HRS imports was driven by a "demand-pull from the Omani side" rather than "supply-push" from China, and that such increase was not driven by efforts to circumvent the orders; and (3) that Chinese HRS exports to Oman were too small relative to China's global HRS exports to support an affirmative circumvention finding. IDM at 22-23. From the onset, Commerce noted that Al Jazeera did not dispute that its data showed increased imports of Chinese HRS during the inquiry period. IDM at 22. Commerce then rejected all three arguments, explaining that (1) its analysis was based on the appropriate comparison and inquiry periods rather than imports dating back to 2008; (2) Commerce found that the reasons for the increase in Chinese HRS imports were immaterial because 19 U.S.C. § 1677j(b) contains no intent requirement. Commerce emphasized that Al Jazeera cited no authority requiring an inquiry into motivation and that the record showed imports of Chinese HRS increased during the POI relative to the comparison period; and (3) 19 U.S.C. § 1677j(b)(3)(C) requires Commerce to examine whether imports of Chinese HRS into Oman *increased*, not whether those imports were significant relative to China's overall HRS exports. IDM at 23. Ultimately, Commerce determined that "the record of this inquiry demonstrates an increase in HRS exports from China to Oman, and that this factor, therefore, weighs in favor of finding circumvention." IDM at 22; PDM at 16.

### V. Establishment of Certification Procedure

Pursuant to 19 C.F.R. § 351.228, Commerce established a certification procedure to facilitate the final affirmative determination. *Final Circumvention Determination*, 91 Fed. Reg. at 4,872. Companies may certify that specific entries of CWP are not made with Chinese-origin HRS. *Id.* To certify that a given entry is not made with Chinese-origin HRS, the exporter must complete and maintain an exporter certification, and provide that certification to the importer, along with supporting documentation including the invoice purchase order and production records. *Id.* The importer, in turn, is required to complete and maintain an importer certification, maintain a copy of the exporter certification, and maintain supporting documentation for both certifications. *Id.* The importer must submit the certifications to Customs and Border Protection (CBP). *Id.* On February 9, 2026, Commerce issued instructions to CBP in accordance with this procedure. CBP Message 6040403, "Final determination of circumvention - antidumping and countervailing duty orders on circular welded carbon quality steel pipe (CWP) from the People's Republic of China (Commerce Case Number A-570-910, C-570-911; Third-Country Case Numbers A-523-910, C-523-911)," dated February 9, 2026 (CBP Message 6040403), at 4-5.

## SUMMARY OF THE ARGUMENT

Commerce's final affirmative determination of circumvention is supported by substantial evidence and fully consistent with the framework Congress established in 19 U.S.C. § 1677j(b). After conducting a country-wide circumvention inquiry, Commerce evaluated the statutory criteria governing merchandise completed or assembled in Oman using components from China—a country subject to antidumping and countervailing duty orders. Commerce considered the mandatory statutory requirements, analyzed the factors identified in § 1677j(b)(3), and

reasonably concluded that CWP completed in Oman using HRS manufactured in China was circumventing the China Orders. The record demonstrated increased exports of Chinese HRS to Oman, production of CWP in Oman using Chinese HRS, processing in Oman that Commerce reasonably found to be minor or insignificant, and trade patterns consistent with circumvention. Based on the totality of the evidence, Commerce lawfully determined that an affirmative finding was necessary to protect the domestic industry and preserve the effectiveness of the China Orders.

In an important concession to Commerce's determination and weighing of the factors, "*Al Jazeera does not contest Commerce's findings under §§ 781(b)(1)(A)-(D).*" ECF No. 25 at 17. (emphasis added). As demonstrated in more detail below, Al Jazeera's purported challenges to Commerce's determination are not supported by the record, the law, Commerce's practice and are ultimately unavailable.

First, Al Jazeera incorrectly argues that Commerce's determination unlawfully subjects the same merchandise to both the China Orders and the Omani antidumping duty orders. Al Jazeera is wrong. The determination doesn't do that. Instead, Commerce established mutually exclusive treatment under the applicable orders. Specifically, CWP completed in Oman using Chinese-origin HRS is subject to the China Orders, while CWP completed in Oman using non-Chinese HRS remains subject to the Omani antidumping duty order. Thus, the applicable order turns on the origin of the HRS input, and no merchandise is simultaneously subject to both orders.

Second, Al Jazeera challenges Commerce's analysis of the factors set forth in 19 U.S.C. § 1677j(b)(3), including patterns of trade, affiliation, and increased imports of the Chinese HRS used to produce the inquiry merchandise. But the statute requires Commerce to consider those

factors as part of a totality-of-the-circumstances analysis, not to treat any single factor as dispositive. Commerce evaluated each factor raised by Al Jazeera, reasonably rejected arguments inconsistent with the statute and Commerce's practice, and found that *the record as a whole* supported an affirmative determination. Because Commerce's analysis was grounded in the record and reflected the statutory framework Congress prescribed, its findings are supported by substantial evidence and in accordance with law.

Third, Al Jazeera argues that Commerce failed to explain why an affirmative determination was necessary to prevent evasion of the China Orders. The record demonstrates otherwise. Commerce explained that circumvention undermines the effectiveness of antidumping and countervailing duty remedies and that the statutory factors, considered together, showed that Chinese-origin HRS was being used to produce CWP in Oman for export to the United States in a manner that circumvented the China Orders. Commerce was not required to identify any particular trade pattern or volume threshold before reaching that conclusion. Having found that the statutory criteria for circumvention were satisfied, Commerce reasonably concluded that an affirmative determination was necessary to prevent evasion of the Orders.

Accordingly, because Commerce followed the circumvention statute, reasonably analyzed the relevant statutory factors, and supported its conclusions with substantial evidence, the Court should sustain Commerce's final determination in full and enter judgment for the United States.

//

//

//

//

## ARGUMENT

### I. Standard of Review

Commerce's determinations shall be sustained if "supported 'by substantial evidence on the record' and otherwise 'in accordance with law.'" *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017) (citing 19 U.S.C. § 1516a(b)(1)(B)). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

A party challenging an agency determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," and the Court sustains Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from the agency's conclusions. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (cleaned up).

"{T}he antidumping statute reveals tremendous deference to the expertise of the Secretary of Commerce in administering the antidumping law." *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996) (internal citations omitted). "Antidumping and countervailing duty determinations involve complex accounting decisions of a technical nature, for which agencies possess far greater expertise than courts." *Id.* (internal citations omitted). "This deference is both greater than and distinct from that accorded the agency in interpreting the statutes it administers, because it is based on Commerce's technical expertise in identifying, selecting and applying methodologies to implement the dictates set forth in the governing statute,

as opposed to interpreting the meaning of the statute itself where ambiguous." *Id.* Furthermore, "The {C}ourt may not substitute its judgment for that of the agency when the choice is between two fairly conflicting views, even though the {C}ourt would justifiably have made a different choice had the matter been before it *de novo*." *Goldilink Indus. Co. v. United States*, 431 F.Supp.2d 1323, 1326 (Ct. Int'l Trade 2006) (internal citations omitted). Likewise, the Court may not "reweigh the evidence or substitute its own judgment for that of the agency{.}" *Usinor v. United States*, 342 F.Supp.2d 1267, 1272 (Ct. Int'l Trade 2004).

Lastly, "Commerce is not bound by its prior determinations," *Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1360 (Fed. Cir. 2023), and "each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record." *Hyundai Elec. & Energy Sys. Co. v. United States*, 15 F.4th 1078, 1089 (Fed. Cir. 2021).

## II. Commerce's Final Determination Does Not Subject A Single Product To Multiple AD Orders, But Rather Lawfully Assigns Circumventing And Non-Circumventing Merchandise To Separate Orders.

Commerce lawfully structured its determination to ensure mutually exclusive treatment of merchandise: circumventing merchandise produced in Oman from Chinese-origin HRS is subject to the China Orders, while non-circumventing merchandise produced from non-Chinese HRS remains subject solely to the Oman Order. This approach prevents overlap between the two orders and preserves the effectiveness of each.

To facilitate this, in the final circumvention determination, Commerce established a certification procedure to facilitate the final affirmative determination. *Final Circumvention Determination*, 91 Fed. Reg. at 4,871. Pursuant thereto, Commerce instructed CBP to suspend liquidation of entries of Omani CWP using Chinese HRS at cash deposit rates for the China

Orders. CBP Message 6040403 at 3. Commerce further instructed CBP with respect to the certification procedure. *Id.* at 4. Commerce noted the circumvention requirements and stated that, if those requirements are not met, the relevant entries "will be liquidated pursuant to applicable administrative reviews of the CWP from China AD/CVD orders or through the automatic liquidation process." *Id.* at 4-5.

Commerce's final determination and implementing CBP instructions ensured mutually exclusive treatment. Commerce did not direct CBP to assess cash deposits or liquidate entries under both the Oman Order and the China Orders. Instead, merchandise determined to be circumventing is subject to the China Orders, while non-circumventing merchandise is subject to the Oman Order. As a result, there is no merchandise subject simultaneously to two antidumping duty orders.

Al Jazeera argues that overlapping orders would present a "major extension of AD law to previously uncharted waters," one so far-reaching that it should require a "clear statement . . . of congressional intent" under the major questions doctrine. Pl. Br. at 13 (citing *West Virginia v. Environmental Protection Agency*, 597 U.S. 697 (2022)). But Commerce has *not* subjected the same merchandise to two orders simultaneously. Far from representing an unprecedented expansion of Commerce's authority, Commerce's circumvention determination falls well within the authority Congress expressly conferred to identify and prevent circumvention involving merchandise completed or assembled in a third country. 19 U.S.C. § 1677j(b).

Al Jazeera cites no authority suggesting that Congress intended to curtail Commerce's authority to address circumvention merely because the circumvention occurs through a country to which an existing order already applies. Instead, Al Jazeera cites Commerce's statement that the circumvention statute exists to address parties' attempts to avoid paying duties such that

otherwise non-subject merchandise "may lawfully include within the scope of an . . . order." *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders*, 87 Fed. Reg. 1907 (Apr. 1, 2022) (*Solar Cells from China*), and accompanying IDM at 13 (stating that circumvention inquiries "necessarily" concern non-subject merchandise in the context of "the express reason for the circumvention provisions of the Act"). As Commerce explained, this statement simply articulates the purpose of circumvention inquiries; it does not constrain Commerce's authority to determine that an affirmative circumvention determination is necessary to prevent evasion of an order. IDM at 6-7. And here, Commerce reasonably determined that an affirmative finding is necessary to prevent evasion.

Chinese CWP is subject to AD and CVD rates from 98.82 percent to 702.38 percent, while Omani CWP is subject to an AD rate of 2.31 percent. IDM at 6. Commerce determined that the "wide disparity" between these rates could provide an incentive to circumvent the Chinese Orders and that the rate from the Oman AD order may be insufficient to prevent evasion of the China Orders through Oman. *Id.* Commerce's determination that an affirmative circumvention determination was therefore necessary to prevent evasion of the China Orders was well within the discretion afforded to Commerce by Congress, as recognized by the Court. Omnibus Trade Act Senate Report at 100; *Mid Continent*, 949 F. Supp. 2d at 1283.

Apart from its statutory and regulatory challenges, Al Jazeera also raises for the first time an argument concerning the purported administrative burdens of Commerce's determination. Pl. Br. at 14. Specifically, Al Jazeera contends that the determination would exclude higher-priced home-market sales of CWP produced from Chinese HRS from margin calculations. *Id.*

As a preliminary matter, Al Jazeera failed to exhaust its remedies with respect to this argument. "{I}t is black letter law that—to properly preserve an issue for appeal—a party generally must first exhaust its remedies by making its argument before the agency, then brief that argument before the trial court. Arguments that are not properly preserved are waived." *AL Tech Specialty Steel Corp. v. United States*, 366 F. Supp. 2d 1236, 1245 (Ct. Int'l Trade 2005). Indeed, this Court must "where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). A party who fails to exhaust administrative remedies may not raise the issue for the first time before the trial court. *See Boomerang Tube LLC v. United States*, 856 F.3d 908, 910 (Fed. Cir. 2017); *Corus Staal BV v. United States*, 502 F.3d 1370, 1378-80 (Fed. Cir. 2007). "Broad, generalized challenges" are insufficient to preserve arguments for judicial review. *See Stanley Works (Langfang) Fastening Sys., Ltd. v. United States*, 279 F. Supp. 3d 1172, 1189 (Ct. Int'l Trade 2017) (citing *Apex Frozen Foods Private Ltd. v. United States*, 862 F.3d 1322, 1331-34 (Fed. Cir. 2017)).

Here, Al Jazeera failed to raise in its administrative case brief the argument that Commerce's affirmative circumvention determination will exclude higher-priced home-market sales of CWP produced from Chinese HRS from margin calculations. *See* Al Jazeera's Case Brief at 1-3 (excluding the argument at issue) As a result, Commerce was not afforded an opportunity to consider this argument and respond such that it might have obviated plaintiffs' objections in the first instance.

Moreover, none of the limited exceptions to exhaustion apply, nor has Al Jazeera raised them. The requirement to exhaust administrative remedies may be excused where, for example administrative remedies would have been futile, or the issue is a "pure question of law." *See Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013). Raising this

argument in Al Jazeera's administrative case brief would not have been futile. Rather, doing so would have given Commerce and interested parties the opportunity to address the issue as appropriate. Nor is Al Jazeera's argument a pure question of law: Al Jazeera's claims about the administrability of the China and Oman Orders necessarily require factual inquiry and agency expertise. Having failed to raise this argument in the administrative proceeding, Al Jazeera cannot now bring this argument to the Court in the first instance.

In any event, Al Jazeera's claim is entirely speculative. *Royal Thai Gov't v. United States*, 978 F. Supp. 2d 1330, 1333 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) ("To establish standing, the claimant must show an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'"). It has offered no evidence as to how Commerce will treat any home market sales in future margin calculations in the Oman AD order. Any remaining question regarding how Commerce will do so should be left to such future determinations.

Moreover, Al Jazeera is required under Commerce's Steel Import Monitoring and Analysis system to report the source of its HRS imports on its import license applications. IDM at 7. Accordingly, Al Jazeera has the information necessary to comply with both the China Orders and the Oman Order.

Finally, Al Jazeera has not explained why administrative burden is a relevant consideration. Section 1677j(b) contains multiple considerations to guide the circumvention inquiry process. The burden of compliance with Commerce's ultimate consideration is not among them. Al Jazeera points to nothing in the statute or Commerce's regulations preventing Commerce from reaching an affirmative circumvention determination through a country already subject to an order. Commerce reached such a determination here in line with its statutory

requirements. This determination was supported by substantial evidence and in accordance with law.

### III. Substantial Evidence Supports Commerce's Findings Regarding The "(b)(3) Factors," and Commerce's Analysis Was Otherwise in Accordance with Law

In addition to the statutory criteria governing circumvention determinations, Commerce evaluated several non-exclusive—(b)(3) factors—that it considers to determine whether action is appropriate pursuant to subsection (b)(1)(E). Under § 1677j(b)(3), Commerce takes into account: (1) patterns of trade, including sourcing patterns; (2) affiliations between the producer or exporter of the input merchandise and the entity that assembles or completes the merchandise in the third country; and (3) whether imports of the input merchandise into the third country increased after initiation of the underlying antidumping or countervailing duty investigation. The Court should reject Al Jazeera's challenges to Commerce's analysis of the (b)(3) factors because (1) those factors are discretionary; and (2) Commerce lawfully weighed these factors, some of which supported an affirmative circumvention finding.

#### A. The Weighing Of The (b)(3) Factors Are Left To Commerce's Discretion

First, the evaluation of the (b)(3) factors are left to Commerce's discretion. Congress directed that Commerce "shall take into account *such factors as*—" the three factors. 19 U.S.C. § 1677j(b)(3). This language does not compel any result based on the agency's consideration of the three factors. And in the immediately preceding paragraph (b)(2), Congress excluded the "such . . . as" qualification contained in paragraph (b)(2). 19 U.S.C. § 1677j(b)(2) (in making "minor or insignificant" determination, Commerce "shall take into account—"). It is axiomatic that, "'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and

purposely in the disparate inclusion or exclusion.'" *Bates v. United States*, 522 U.S. 23, 29-30 (1997) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Here, consistent with the statute's plain meaning, Commerce reached its circumvention determination based on the evaluation of each criteria, not just the (b)(3) factors. This is no novel legal position. *See*, *e.g.*, *Al Ghurair*, 65 F.4th at 1363 (sustaining Commerce's affirmative determination where the weight of the evidence with respect to its "multi-factor" statutory circumvention analysis supported it, despite error with respect to (b)(2) sub-factor). Thus, even if all the (b)(3) factors categorically support negative determinations (which is not the case here, as discussed below), this would not necessarily compel a negative determination as they do not necessarily control the outcomes of the other (b)(1) factors that must be shown to support an affirmative circumvention finding..

Furthermore, the SAA directs that (b)(1) contains the "mandatory factors" for affirmative circumvention determinations. SAA at 893. So, by their plain language, the (b)(3) factors are *not* mandatory. The text further confirms this, directing only that Commerce is to "*consider*" factors "such . . . as" the (b)(3) factors in "determining whether to include merchandise" in an order, not that Commerce shall treat these factors as mandatory. 19 U.S.C. § 1677j(b)(3) (emphasis added).

In sum, rather than being outcome determinative, the (b)(3) factors are a non-exhaustive set of non-dispositive factors that Commerce weighs in determining whether to reach affirmative determinations. Indeed, the statute and the SAA indicate that the (b)(3) factors are in fact of secondary importance in Commerce's circumvention analyses.

//

//

### B. Commerce Lawfully Weighed The (b)(3) Factors, Finding That The Totality Of Circumstances Of The Statutory Factors As A Whole Weighed In Favor Of An Affirmative Circumvention Determination

With respect to the (b)(3) factors Commerce conducted the analysis Congress prescribed. Rather than elevating any individual factor above the others, Commerce considered the (b)(3) factors collectively and evaluated whether the record, viewed as a whole, supported a finding of circumvention. After examining patterns of trade, affiliation, imports of Chinese-origin inputs, and the other relevant statutory considerations, Commerce determined that the totality of the circumstances weighed in favor of an affirmative circumvention determination. That conclusion reflects precisely the type of fact-intensive judgment Congress entrusted to Commerce and is supported by substantial evidence on the record. Each factor is addressed below.

#### (1) Patterns of Trade and Sourcing

With respect to the pattern of trade and sourcing, Commerce relied on publicly available U.S. data for CWP imports from China and Oman during the comparison period, 2014-18, and the period of inquiry, 2019-23. Circumvention Allegation at Exhibit 8; PDM at 14. Commerce also looked to Al Jazeera's purchases of HRS from China and third countries, production of CWP, and sales of CWP to the U.S. during the period of inquiry. Al Jazeera's IQR at Exhibits 12 and 31; PDM at 15.

Commerce found that trade patterns supported an affirmative circumvention determination, noting that: U.S. imports of CWP from Oman increased 22.29% (from 197,172 MT to 241,124 MT), while U.S. imports of CWP from China decreased 70.03% (from 207,554 MT to 62,207 MT), and Chinese exports of HRS to Oman increased by more than 14,182.82% (from 2,444 MT to 349,072 MT) during the relevant period. IDM at 14; citing, "Preliminary

Analysis Memorandum for Al Jazeera Steel Products Co., SAOG," dated July 17, 2025 (Preliminary Analysis Memorandum), at 4-5. See table for illustration purposes below:

| Trade Flow | Comparison Period (MT) | Period of Inquiry (MT) | Percentage Change |
|---|---|---|---|
| U.S. Imports of CWP from Oman | 197,172 | 241,124 | +22.29% |
| U.S. Imports of CWP from China | 207,554 | 62,207 | −70.03% |
| Chinese Exports of HRS to Oman | 2,444 | 349,072 | +14,182.82% |

Commerce found that trade patterns supported an affirmative circumvention determination, citing a significant increase in U.S. imports of CWP from Oman, a sharp decline in imports from China, and a substantial increase in Chinese HRS exports to Oman during the period of inquiry. Commerce found these factors, as well as an analysis of Al Jazeera's quantity and value information, weighed in favor of an affirmative circumvention determination. PDM at 14.

Al Jazeera alleges that the pattern-of-trade data considered by Commerce shows only a modest increase in imports from Oman, corresponding with a decrease in imports from China and no connection between these two trends. Pl. Br. at 18-19. Section 1677j(b)(3)(A) requires that Commerce "take into account" factors like "the pattern of trade," which Commerce has done here. IDM at 16; *see also Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357, 1380 (Ct. Int'l Trade 2021), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023) (noting that 19 U.S.C. § 1677j(b)(3)(A) "does not mandate the consideration of any specific data in Commerce's evaluation of the pattern of trade," but rather "sets out 'the pattern of trade, including sourcing patterns,' as one of multiple '{f}actors to consider.'"). Commerce's consideration of such factors is based on the totality of the circumstances and contingent on the facts specific to each

case. *See Welded Carbon Steel Standard Pipes and Tubes from India: Preliminary Negative Determinations of Circumvention of the Antidumping Order*, 87 Fed. Reg. 52,507 (August 26, 2022) (*Pipe and Tube from India*), and accompanying PDM at 9 (*Pipe and Tube from India* PDM); *see also Deacero S.A.P.I. de C.V. v. United States*, 838 F. Supp. 3d 1351, 1363 n.6 (Ct. Int'l Trade 2026) ("The statute's plain language directs Commerce to conduct a fact-specific inquiry, and its legislative history repeatedly affirms the flexibility Commerce enjoys in conducting its circumvention analysis.").

Here, as explained above, Commerce compared import statistics of CWP from the comparison period and the period of inquiry, finding a 22.29 percent increase in imports of CWP from Oman, and a 70.03 percent decrease in imports from China. PDM at 14; *see also* Circumvention Allegation at Exhibit 8). Commerce also analyzed Chinese exports of HRS to Oman and quantity and value information provided by Al Jazeera regarding its purchases of HRS from China and third-countries, its production of CWP, and its entries and sales of CWP to the United States. Commerce determined, based upon this information, that the patterns of trade examined weighed in favor of an affirmative circumvention determination. *Id.* at 15; *see also* Al Jazeera's IQR at Exhibits 12 and 31. Commerce's analysis was consistent with the approach taken in prior circumvention inquiries, in which Commerce has determined that a " significant rise in imports" from the country through which circumvention is alleged, together with a corresponding decline in imports from the allegedly circumventing country supported an affirmative circumvention determination. *See, e.g., Oil Country Tubular Goods From the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 90 Fed. Reg. 40336 (Dept. of Commerce Aug. 19, 2025), and accompanying PDM at 13, unchanged in *Oil Country Tubular Goods From*

*the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 Fed. Reg. 9811 (Feb. 27, 2026), and accompanying IDM (finding that a "significant rise in imports . . . from Thailand during the {POI}, together with a corresponding decline in imports of such merchandise from China, {was} indicative of a country-wide trend of circumvention"). Commerce analyzed the facts on the record and explained that the negative correlation between imports from Oman and China, as well as the information on the record as a whole, weighed in favor of an affirmative circumvention determination. IDM at 16; PDM at 14-15.

Al Jazeera points to fluctuations in imports of CWP from China and Oman, arguing that such fluctuations are inconsistent with an affirmative circumvention determination. Pl. Br. at 19-20. As previously mentioned, however, Commerce considers trade patterns as part of its overall analysis. No single pattern of trade is dispositive in terms of reaching an affirmative circumvention determination in any particular instance. For example, Omani export volumes need not completely replace those of China for Commerce to find that circumvention exists. Commerce engaged in a fact-specific analysis of the totality of the circumstances and determined that the information on the record weighed in favor of an affirmative determination.

Al Jazeera also asserts that its export volumes are not indicative of circumvention. Pl. Br. at 21. But Commerce did not state that Al Jazeera's export volumes themselves weighed in favor of an affirmative determination. *See* IDM at 14; PDM at 15 (simply stating that Commerce analyzed the quantity and value information provided by Al Jazeera and that Commerce found "{b}ased on the information on the record, . . . that the patterns of trade examined weigh{ed} in favor of an affirmative circumvention determination"), and Memorandum, Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders on Circular Welded Carbon

Quality Steel Pipe from the People's Republic of China: Preliminary Analysis Memorandum for Al Jazeera Steel Products Co., SAOG , dated July 17, 2025 (describing Al Jazeera's U.S. and home market sales of CWP without stating whether they weighed in favor of an affirmative determination). As noted previously, section 1677j(b)(3)(A) "does not mandate the consideration of any specific data in Commerce's evaluation of the pattern of trade." *Al Ghurair*, 536 F. Supp. 3d at 1380, *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023). Rather, circumvention inquiries involve fact-specific inquiry of the totality of the circumstances.

As Commerce noted, patterns of trade is *one* factor to be considered in circumvention determinations. IDM at 13; *see also Al Ghurair*, 536 F. Supp. 3d at 1380, *aff'd,* 65 F.4th 1351 (Fed. Cir. 2023). Commerce is not required to find any particular pattern of trade evidence and Commerce may reasonably and in line with its practice, find circumvention despite one piece of pattern of trade data not, in itself, supporting such a determination. *See Al Ghurair,* 536 F. Supp. 3d at 1380, *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023) ("section 1677j(b)(3)(A) does not mandate the consideration of any specific data in Commerce's evaluation of the pattern of trade").

Al Jazeera contends that Commerce requires a "'clear, definitive changing pattern of trade' and a 'substantial and consistent shift' as prerequisites for circumvention." Pl. Br. at 23 (citing *Pipe and Tube from India* PDM at 22). In *Pipe and Tube from India*, however, Commerce clarified that no particular pattern of trade need be established for an affirmative circumvention finding. *See Certain Welded Carbon Steel Standard Pipes and Tubes From India: Final Negative Determinations of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 12,917 (Dep't of Commerce Mar. 1, 2023), and accompanying IDM at 9. Rather, Commerce underscored that its circumvention determination, like all circumvention determinations, depended on an examination of the specific facts on the record. *Id.* Based on the

facts presented in *Pipe and Tube from India*, Commerce and reached a negative determination. *Id.* Here, Commerce reached a different conclusion based upon different and unique record facts. Commerce's "exercise of discretion on a case-by-case and fact specific basis," does not demonstrate that Commerce here deviated from established past practice, much less implicate any claimed reliance interest. *Wind Tower Trade Coal. v. United States*, 810 F. Supp. 3d 1351, 1357 (Ct. Int'l Trade 2025) (citation omitted).

Next, Al Jazeera challenges the adequacy of Commerce's analysis of its sourcing of HRS. *Id.* at 25. Al Jazeera asserts that "the consistency of its purchasing practice weighs against a finding that there has been a change in {its} sourcing patterns" as these patterns result from "normal marketplace changes." Pl. Br. at 26. "{T}he existence of record evidence that can provide context for shifting trade patterns does not alter Commerce's analysis under the statute." *Deacero*, 838 F. Supp. 3d at 1377. Commerce's pattern of trade and sourcing analysis is conducted "without regard to any underlying motivation or intent." *Id.* Further, Commerce observed similar fluctuations in past proceedings. *See Certain Corrosion-Resistant Steel Products From Taiwan: Affirmative Preliminary Determination of Circumvention Inquiry on the Antidumping Duty Order*, 84 Fed. Reg. 32,864 (July 10, 2019) (Taiwan Circumvention), and accompanying PDM at 21, unchanged in *Certain Corrosion-Resistant Steel Products From Taiwan: Affirmative Preliminary Determination of Circumvention Inquiry on the Antidumping Duty Order*, 84 Fed. Reg. 70,937 (Dep't of Commerce Dec. 26, 2019). In the Taiwan Circumvention, Commerce found a country-wide increase in HRS imports with variation among different CORE producers. *Id.* Commerce determined that this increase, along with an increase in imports by one producer "support{ed the} finding . . . that the totality of evidence support{ed} an affirmative circumvention determination. *Id.*

Here, Commerce found a **14,182.82-percent** increase of Chinese exports of HRS to Oman from the comparison period to the period of inquiry. IDM at 14. As it had in past determinations, Commerce reasonably determined that fluctuations in HRS purchases from China "did not detract from the totality of evidence considerations which supported an affirmative circumvention determination." IDM at 19.

While Al Jazeera insists that evidence of consistency, rather than intent, undermines Commerce's determination, it nonetheless attempts to incorporate intent into the circumvention analysis. Pl. Br. at 27. Al Jazeera's argument that "the language of intent . . . infuses the entire case" is belied by the statutory language used by Congress. As the Court has acknowledged, the statute "requires Commerce to consider, among other things, the patterns of trade, including sourcing patterns, and whether there has been an increase in imports of the parts or components, *without regard to any underlying motivation or intent*." *Deacero*, 838 F. Supp. 3d at 1377; *see also Al Ghurair*, 536 F. Supp. 3d at 1370 (stating that the statute "does not provide for consideration of whether circumvention occurred as a response to the imposition of AD/CVD duties or the initiation of an investigation").

Al Jazeera also argues that Commerce erred in declining to consider its proffered trade statistics. Pl. Br. at 27. Al Jazeera asserts that it provided Steel Import Monitoring and Analysis statistics from the end of 2020 through 2024, showing that its predominant use of Chinese HRS was "transitory" and "rebalanced" in the months following the period of investigation. *Id.* at 28. Al Jazeera contends that Commerce declined to consider the Steel Import Monitoring and Analysis statistics from 2024 and made no substantive analysis of the remaining statistics, and that its treatment of the statistics was an abuse of discretion. *Id.* at 29.

This mischaracterizes the record. Commerce selected the Period of Inquiry (POI) and comparison period based upon when circumvention was alleged to have occurred. IDM at 8-9. This choice was reasonable and consistent with past determinations. For example, in *Restressed Concrete Steel Wire Strand From Mexico*, Commerce selected the inquiry and comparison periods based on the when the requestors believed the circumvention to have begun. *Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 89 Fed. Reg. 79,252 (Dep't of Commerce Sept. 27, 2024), *as amended at* 89 Fed. Reg. 85944 (Oct. 29, 2024), and accompanying IDM at 24.

The statute "does not mandate the use of a specific time period to analyze the pattern of trade." *Al Ghurair*, 536 F. Supp. 3d at 1380. In *Al Ghurair*, the Court deferred on that basis to Commerce's selection and sustained its decision to limit its analysis to the period in question.[4] *Id.* As Commerce explained, "the purpose of a circumvention proceeding is to determine whether an order has been circumvented, not whether there was a period in time when circumvention did not occur." IDM at 10. Here, Commerce reasonably selected the POI and comparison period and limited its analysis to those periods. Al Jazeera points to Commerce's reference to a data point from 2024 to argue that it is compelled to consider data outside of its

---

[4] The Court cited *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984) in sustaining Commerce's selection of the inquiry period as reasonable. Even though the two-step framework for resolving issues of statutory interpretation set forth in *Chevron* has been [4] The Court cited *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984) in sustaining Commerce's selection of the inquiry period as reasonable. Even though the two-step framework for resolving issues of statutory interpretation set forth in *Chevron* has been overturned, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024), the reasoning of *Al Ghurair* remains persuasive and relevant. In *Al Ghurair*, the Court recognized that the statute did not direct Commerce to use a particular time period, leaving it to Commerce's discretion. 536 F. Supp. 3d at 1380. In other words, Congress has delegated discretionary authority to Commerce to "fill up the details" of the anticircumvention statute. *Id.* at 395.

chosen POI and comparison period. Pl. Br. at 35. Commerce explained that it did not rely on that data. IDM at 10.

Al Jazeera next claims that Commerce relied on post-POI data in *Pipe and Tube from India* citing to Commerce's consideration of 2021 data. Pl. Br. at 36. However, while Commerce discussed comparison periods proposed by the domestic parties, the period of inquiry of that proceeding included 2021. *Pipe and Tube from India* IDM at 22 ("However, our analysis in the Preliminary Determination was based on the period examined (2017-2021). . ."); *Pipe and Tube from India* PDM at 4 ("The period of the inquiry is January 1, 2017, through December 31, 2021."). In contrast, the period of inquiry of the instant circumvention proceeding does not include 2024. IDM at 4 ("The period of inquiry is January 1, 2019, through December 31, 2023."). Accordingly, the alleged inconsistency between *Pipe and Tube from India* and the instant case that Al Jazeera attempts to illustrate does not in fact exist.

Even so, as previously discussed, that determination, as all circumvention determinations, was fact-specific and does not mandate a particular finding in subsequent determinations. *Pipe and Tube from India* IDM at 9. A single fact-specific determination does not undermine Commerce's judicially recognized discretion to limit its analysis to the POI and comparison period. *See Al Ghurair*, 536 F. Supp. 3d at 1380.

Al Jazeera contends that the Steel Import Monitoring and Analysis statistics evince the transitory nature of its predominant use of Chinese HRS. Pl. Br. at 28. Al Jazeera specifically argues that these statistics show a pattern of transitoriness and consistency in sourcing that weighs against a finding of circumvention. Pl. Br. at 33, 38. As previously noted, however, Commerce is not required to demonstrate a particular pattern of trade evidence and "the existence of record evidence that can provide context for shifting trade patterns does not alter

Commerce's analysis under the statute." *Deacero*, 838 F. Supp. 3d at 1377. Here, Commerce reviewed the evidence on the record and "consider{ed} . . . the patterns of trade, including sourcing patterns, and whether there ha{d} been an increase in imports of the parts or components, without regard to any underlying motivation or intent." *Id.* Commerce performed the analysis required by the Statute and found that a 14,182.82 percent increase in Chinese HRS exports to Oman, together with its consideration of the other statutory factors, weighed in favor of an affirmative circumvention determination. This determination was supported by substantial evidence and in accordance with law. Thus, substantial evidence supports Commerce's finding that the Section 1677j(b)(3)(A) "pattern of trade" factor evidenced circumvention.

**(2) Affiliation**

In the circumvention determination, Commerce determined that Al Jazeera was not affiliated with any Chinese producer of HRS. IDM at 21. Nonetheless, Commerce determined the totality of factors in the inquiry supported an affirmative determination. *Id.* This determination is supported by substantial evidence and in accordance with law.

Al Jazeera alleges that Commerce's analysis of affiliation was insufficiently fulsome and that Commerce failed to articulate the weight given to this criterion in its circumvention determination. Pl. Br. at 42. Al Jazeera puts forth a standard found nowhere in the statute. Section 1677j(b)(3) requires Commerce to "take into account" factors including affiliation. The statute does not, however, require any particular finding with respect to affiliation in order to reach an affirmative circumvention determination. Indeed, Commerce has reached affirmative circumvention determinations in the absence of such a finding in the past. *See e.g.*, *Certain Corrosion-Resistant Steel Products from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83

Fed. Reg. 23,895 (Dep't of Commerce May 23, 2018), and accompanying IDM at 54 (noting that "{a}ffiliation is one of several factors {Commerce} consider{s} in reaching {its} determination," that such a determination is reached "based on the totality of the evidence for all the factors," and that "the lack of affiliation does not constitute evidence that circumvention is not occurring"). Commerce's understanding has been recognized by the Court. *See Al Ghurair*, 536 F. Supp. 3d at 1380 (noting that pattern of trade, another factor under section 1677j(b)(3), is simply "one of multiple '{f}actors to consider'").

Here, Commerce found that Al Jazeera was not affiliated with any producer of CWP or HRS in China. IDM at 21. Such a finding does not preclude an affirmative circumvention finding. Commerce found that the other two factors under section 1677j(b)(3) weighed in favor of an affirmative circumvention determination. PDM at 14-16. Accordingly, Commerce determined that an affirmative circumvention determination was warranted "{b}ased on the totality of factors in th{e} inquiry," affiliation notwithstanding. IDM at 21. Commerce's determination was, therefore, reasonable, supported by substantial evidence, and in accordance with law.

**(3) Increased Imports**

Commerce's determination that shipments of HRS from China to Oman increased during the period of inquiry was supported by evidence on the record and in accordance with law.

Al Jazeera challenges this finding as unlawful and inconsistent with record evidence. Pl. Br. at 45-48. Commerce found that HRS exports from China to Oman increased by 14,182.82 percent from the comparison period to the POI. PDM at 16.

Al Jazeera asserts that its purchases of Chinese HRS constituted a smaller share of its purchases during the POI than in the comparison period. Pl. Br. at 46. Al Jazeera argues that Commerce reached its determination by virtue of an increase in the share of Chinese HRS in Al Jazeera's purchases between 2021 and 2022 and that Commerce, therefore, disregarded its POI-to-comparison-period bloc analysis. *Id.* at 45-46. This is a mischaracterization of Commerce's comparison. Commerce found that "{hot-rolled steel} exports from China to Oman increased from 2,444 MT to 349,072 MT (*i.e.*, an increase of 14,182.82 percent) from the comparison period to {POI}." PDM at 16; IDM at 22 (clarifying that "Al Jazeera does not contest that the data it provided indicate an increase of imports of HRS from China from the comparison period to the inquiry period"). *See* PDM at 15.

| **U.S. Imports of CWP (MT)**[76] | | | | | |
|---|---|---|---|---|---|
| | **2014** | **2015** | **2016** | **2017** | **2018** |
| **China** | 15,164 | 31,633 | 85,036 | 53,974 | 21,748 |
| **Oman** | 42,805 | 36,352 | 25,535 | 43,762 | 48,719 |
| | **2019** | **2020** | **2021** | **2022** | **2023** |
| **China** | 10,671 | 7,813 | 12,914 | 12,993 | 17,816 |
| **Oman** | 51,066 | 33,906 | 53,390 | 58,376 | 44,387 |

Commerce acknowledged that "shipments of Chinese hot-rolled steel to Al Jazeera [ ] towards the end of the {POI}" and that "Al Jazeera continue{d} to purchase an [ ]. Preliminary Analysis Memorandum at 4, 5. In doing so, Commerce "provide{d} a more detailed analysis of these {section 1677j(b)} factors" and did not undermine or deviate from its POI-to-comparison-period bloc analysis. *Id.* at 1.

Al Jazeera next contends that its multiplicity of HRS sources weighed against an affirmative determination and that Al Jazeera's purchases were driven by its demand needs. As noted previously, however, underlying motivation or intent is not a factor under the statute.

*Deacero*, 838 F. Supp. 3d at 1377 (stating that "Commerce reasonably made its affirmative circumvention finding without regard for the reasons driving" an increase in imports during the period of inquiry"). Moreover, the fact that Al Jazeera can contextualize its increased purchases of Chinese HRS does not alter Commerce's analysis. *See id.* (noting that "the existence of record evidence that can provide context for shifting trade patterns does not alter Commerce's analysis under the statute").

Al Jazeera lastly argues that Commerce's determination is inconsistent with *Pipe and Tube from India*. Pl. Br. at 47. As noted previously, Commerce clarified in that determination that circumvention inquiries are fact-specific and Commerce's determination in one case does not dictate a particular finding in another. *Pipe and Tube from India* IDM at 9. Indeed, Commerce's analysis in this determination is consistent with prior determinations. *See, e.g. Prestressed Concrete Steel Wire Strand From Mexico: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 89 Fed. Reg. 79,252 (Sept. 27, 2024), and accompanying IDM at 23-25 (finding that the respondent's argument that its increase in imports were the result of resumed production in the United States rather than circumvention did "not contest {Commerce's} conclusion in the Preliminary Determination that {it's} purchases . . . increased since the Order and that such an increase in imports supports an affirmative circumvention finding"); *see also Certain Cold-Rolled Steel Flat Products From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 Fed. Reg. 23,891 (May 23, 2018), and accompanying IDM at Comment 7 (finding "that the level of imports . . . increased after the initiation of the {orders} and that this fact support{ed} a finding of circumvention" despite the respondent's argument that, while HRS imports from China increased, they decreased as a percentage of total HRS

imports). Commerce's "exercise of discretion on a 'case-by-case' and fact-specific basis 'complicates any efforts to divine 'rules' from past agency practice.'" *Goodluck India Ltd. v. United States*, 670 F. Supp. 3d 1353, 1374 (Ct. Int'l Trade 2023) (quoting *Fujian Yinfeng Imp & Exp Trading Co., Ltd. v. United States*, 607 F. Supp. 3d 1301, 1316 (Ct. Int'l Trade 2022). Al Jazeera's contention relies on a single fact-specific determination while ignoring the broader sweep of Commerce's practice. In the instant determination, Commerce analyzed the evidence on the record and reached a determination supported by substantial evidence and in accordance with law.

## IV. Commerce's Determination That an Affirmative Determination Was Appropriate to Prevent Evasion of the China Orders Is Supported by Substantial Evidence and In Accordance With Law

Commerce determined, based on record evidence, that an affirmative determination of circumvention was appropriate under section 1677j(b)(1)(E). IDM at 20-21. Al Jazeera alleges that Commerce failed to explain why action was appropriate to prevent evasion of the Orders as required by section 1677j(b)(1)(E). Pl. Br. at 48. The Court should reject this argument because (1) Al Jazeera failed to exhaust its remedies with respect to this argument and (2) in any event, the basis for Commerce's conclusion is reasonably discernible.

In its administrative case brief, Al Jazeera failed to raise the argument that Commerce did not separately explain the appropriateness of its action under section 1677j(b)(1)(E). *See* Al Jazeera's Case Brief at 1-3 (excluding the argument at issue). As a result, Commerce did not get a chance to consider its argument, develop a record, and potentially resolve or narrow the issues for judicial review. *See Itochu Bldg Prods. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013) (outlining the purposes served by exhaustion of remedies).

None of the exceptions to exhaustion apply here, nor has Al Jazeera raised them. Raising this argument in Al Jazeera's administrative case brief would not have been futile. *See Itochu*,

733 F.3d at 1146. Rather, doing so would have given Commerce the opportunity to fully address its reasoning in the IDM. Nor does Al Jazeera's argument present a pure question of law. *See id.* Commerce's determination that action is appropriate to find evasion is necessarily an exercise of discretion, informed by record facts. Having failed to seek further explanation during the administrative proceeding, Al Jazeera cannot now complain that Commerce did not provide a sufficiently fulsome explanation for its determination.

In any event, Al Jazeera's challenge rests upon a misunderstanding of both Commerce's determination and the relevant legal standard. The factors under section 1677j(b)(3) inform Commerce's determination whether action is appropriate to prevent evasion of an order under section 1677j(b)(1)(E). *See SeAH Steel Corp. v. United States*, 815 F. Supp. 3d 1369, 1382-83, 1384 (Ct. Int'l Trade 2025); *see also Steel Wire Garment Hangers From the People's Republic of China and the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order on Steel Wire Garment Hangers From the People's Republic of China and the Antidumping and Countervailing Duty Orders on Steel Wire Garment Hangers From the Socialist Republic of Vietnam*, 91 Fed. Reg. 60,086 (Sept. 22, 2026), and accompanying PDM at 15 ("In determining whether action is appropriate to prevent evasion of the Order, {19 U.S.C. § 1677j(b)(3)} of the Act instructs Commerce to consider the following factors: pattern of trade and sourcing, affiliation with suppliers, and increases in imports."). Consistent with that understanding, Commerce "preliminarily determine{d} that action is appropriate to prevent evasion of the *Order* pursuant to section 781(b)(1)(E) of the Act" after "taking into consideration section 781(b)(3) of the Act." PDM at 17. In the final determination, Commerce continued to find that the inquiry merchandise was circumventing the China Orders. IDM at 24.

*SeAH Steel* does not require more. *See* Pl. Br. at 48-49. In that case, Commerce found the section 1677j(b)(3) factors to be "mixed and inconclusive," but nonetheless determined that such a finding "did not detract from a finding that an action is appropriate." *SeAH Steel*, 815 F. Supp. 3d at 1384. The Court reasoned that this assertion "assume{d} that action was found to be appropriate on some other grounds" and ordered Commerce, on remand, to reconsider or further explain the factors on which it relied. *Id.*

By contrast, here, Commerce did not find the factors under section 1677j(b)(3) to be inconclusive. Rather, Commerce found two factors weighed in favor of an affirmative determination: (1) shifting patterns of trade and (2) increased imports of HRS from China to Oman. PDM at 15-16, unchanged in IDM. Although Commerce found no affiliation, Commerce determined that this factor did not outweigh its other findings. IDM at 21. Thus, the basis for Commerce's determination that a finding of evasion is appropriate is evident from its assessment of the other section 1677j(b)(1)factors. No purpose would be served by a remand, as Al Jazeera requests, Pl. Br. at 50, because Commerce's "decisional path is reasonably discernible." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998).

Lastly, Al Jazeera contends that Commerce's conclusion is based on "supposition and conjecture." Pl. Br. at 49. This is not the case. As explained above, Commerce's conclusion was supported by its analysis of the (b)(3) Factors. Commerce found the record demonstrated an actual strong negative correlation between U.S. imports from Oman and China, not a conjectural one. IDM at 16. Specifically, Commerce found that the correlation coefficient of −0.6383 reflected a strong negative correlation consistent with circumvention, particularly given the simultaneous decline in U.S. imports of CWP from China and the dramatic increase in Chinese HRS exports to Oman. IDM at 16; PDM at 4.

Likewise, Commerce determined that the volume of Omani imports of Chinese HRS did increase, not that they could have. *Id.* at 21. Al Jazeera notes Commerce's observation that "the wide disparity between the rates for the two countries could provide an incentive" for circumvention and that "that the rate from the Oman AD order may not be sufficient to prevent evasion of the Chinese AD/CVD *Orders* through Oman." Pl. Br. at 49. This language, however, was a response to Al Jazeera's assertion that Oman's 2.31 percent antidumping duty rate served as adequate protection against circumvention of merchandise subject to China's 98.82 and 702.38 percent rates. Al Jazeera's Case Brief at 4.

In sum, Commerce's determination that action was appropriate to prevent evasion of the China orders under section 1677j(b)(1)(E) was based on the facts on the record pursuant to the factors provided under the statute. This Court should sustain Commerce's determination.

## CONCLUSION

For these reasons, we respectfully request that the Court deny plaintiff's motion, sustain Commerce's final affirmative determination, and enter judgment for the United States.

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

TARA K. HOGAN
Assistant Director

KHASHAYAR ATTARAN
Trial Attorney
United States Department of Justice
Civil Division, Commercial Litigation Branch
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 257-8465
Email: khashayar.attaran@usdoj.gov

*Attorneys for Defendant*

OF COUNSEL:
JOSHUA ANGELO
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
(202) 875-4092
Joshua.Angelo@trade.gov

November 12, 2026

**CERTIFICATE OF SERVICE**

I certify that on November 12, 2026, I caused to be served by appropriate means under Administrative Order 25-01, and with the consent of the parties, copies of Defendant's Confidential Response to Plaintiffs' Rule 56.2 Motions for Judgment on the Agency Record.

/s/ Khashayar Attaran
KHASHAYAR ATTARAN

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 12,528 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Khashayar Attaran
KHASHAYAR ATTARAN